Shirley A. SMILEY, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS; Navy Resale and Services Support Office, Respondents.

No. 91–70335.

United States Court of Appeals, Ninth Circuit.

Submitted May 15, 1992 *.

Opinion Filed Aug. 31, 1992.

Opinion Withdrawn Jan. 21, 1993.

Decided Jan. 21, 1993.

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a); Circuit Rule 34–4.

Shirley A. Smiley, pro se.

Thomas R. Ungleich, Navy Exchange Service, Staten Island, NY, for respondent Navy Resale and Service Support Office.

Before FERGUSON, REINHARDT, and KOZINSKI, Circuit Judges.

### ORDER

The opinion filed August 31, 1992, 973 F.2d 1463, is withdrawn. A new opinion will be filed.

### OPINION

FERGUSON, Circuit Judge:

This case arises from denial of a claim for benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1988) ("the Longshore Act"). An administrative law judge (ALJ) denied Shirley A. Smiley's claim for permanent total disability benefits as compensation for a back injury and psychological injury suffered while employed by the Navy. The United States Department of Labor Benefits Review Board affirmed the ALJ's decision. We reverse.

### BACKGROUND

In 1983 Shirley A. Smiley ("Smiley") worked as a security and loss prevention manager for a Navy Exchange at the Le-Moore Naval Air Station in California. She claims that her disabling back problems

developed after a fall at work on October 31, 1983. Earlier in 1983, she investigated her supervisor for various fiscal irregularities. Smiley claims that her psychological problems are the result of harassment in retaliation for these whistle-blowing activities.

Smiley transferred to another Naval Exchange at Mare Island in 1984 but had trouble performing her new job. She took a disability leave due to physical and psychological problems. In June 1985, while on leave, she was terminated for poor job performance.

In June 1985 Smiley filed a claim for disability, claiming that job stress made it impossible to return to her work as a security manager. She applied for and received temporary benefits on the stress claim from June 1985 until October 1985 and again from June 1986 through June 1988, when the Navy ceased paying, claiming Smiley was not totally disabled from her back injury and that her stress resulted from a legitimate personnel action which was therefore not compensable.

By 1986, Smiley had retained an attorney, Sanford Killip ("Killip"), to represent her. At some point, Gates, McDonald & Co. ("Gates, McDonald") also became a client of Killip's. Gates, McDonald was the Navy's insurance plan administrator and a named defendant in the proceeding before the ALJ. In fact, the record contains a letter in which Killip acknowledges that Gates, McDonald was a defendant. A Navy attorney handled the hearing before the ALJ and the negotiations involved in Smiley's case.

The ALJ conducted a hearing on June 23, 1988, and issued its opinion on November 23, 1988. Killip represented Smiley at the hearing. The ALJ found that Smiley's orthopedic problems were not permanently disabling. He found that her testimony regarding her psychological complaints was not credible, and that her stress resulted from a non-compensable legitimate personnel action. He denied her claim of permanent physical and psychological injury.

Killip died in 1989 after filing a notice of appeal with the United States Department of Labor Benefits Review Board ("BRB"). The BRB delayed action to give Smiley time to retain new counsel, which she was unable to secure. The BRB affirmed the ALJ's decision on March 27, 1991.

In addition to appealing the BRB's decision denying her benefits, Smiley claims her attorney was incompetent and had a conflict of interest because he also represented the Navy's insurance plan administrator, Gates, McDonald. The Navy contends that (1) the issue of her attorney's representation was not raised below and should not be heard on appeal, (2) there was no actual conflict, and (3) Killip provided competent representation. Because we reverse on the conflict issue, we do not reach the merits of Smiley's contested disability claim.

## DISCUSSION

██ Disability for work injuries suffered by Naval Exchange employees is governed by the Longshore Act. 5 U.S.C.A. § 8171 (West 1980). The Longshore Act provides that when a claim for compensation cannot be amicably resolved, a Department of Labor commissioner shall order a hearing before a qualified ALJ. 33 U.S.C. § 919(c)–(d). Orders of the ALJ are appealed to the BRB. 33 U.S.C. § 921(b)(3). The BRB must accept the ALJ's fact findings if they are supported by substantial evidence. *Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs*, 629 F.2d 1327, 1329 (9th Cir. 1980). The court of appeals for the circuit in which the injury occurred reviews the decision of the BRB. 33 U.S.C. § 921(c). We review the BRB's decision for errors of law and adherence to the substantial evidence standard. *Hairston v. Todd Shipyards Corp.*, 849 F.2d 1194, 1195 (9th Cir. 1988).

1. *Appellate Review of Smiley's Claims Against Her Attorney.*

██ The Navy argues that we should not review Smiley's claims against her attorney because she raised them for the first time on appeal. We disagree.

Early in 1988 Killip notified the ALJ of a possible motion to withdraw as plaintiff's attorney. By letter dated February 1, 1988, the ALJ informed him that motions must be put in writing. On February 16, 1988, Killip, the Navy attorney and the ALJ participated in a telephone conference to discuss a continuance. The resulting Order of Continuance issued by the ALJ on February 29, 1988, notes that "[d]uring the call, the attorneys also discussed a potential conflict of interest between Claimant and Gates, McDonald, another client of Mr. Killip's. However, they both agreed that there is no real conflict because the Navy is now handling all negotiations as well as the hearing in this matter."

It appears that Mr. Killip never made a formal motion to withdraw. However, the ALJ, on the record, clearly approved or at least acquiesced in the cozy arrangement agreed to by Killip and the Navy. Killip would represent Smiley at the hearing while keeping Gates, McDonald as his client.

There is no indication in the record that Smiley knew of the conflict while her case was before the ALJ. Killip filed the appeal with the BRB. Thus, Smiley could not have raised the conflict issue during the time her attorney represented her.

Killip died in April of 1989. Smiley wrote to the BRB on July 20, 1989. She asked for more time to retain counsel and described her complaints against Killip. Her letter stated, "My attorney had in his possession evidence proving case, but failed to produce it. This might have been because he was ill or possibly because he was retained by the insurance company representing the carrier for the Navy Resale System one month before my first hearing was set." On October 20, 1989, Smiley again wrote the BRB, informing them that she had received her file, which had been in Mr. Killip's possession. She told the BRB that she had found a telephone message from the Navy attorney to Killip in the file, offering to settle the case for $150,000, an offer she claims Killip never told her about.

On May 16, 1990, the BRB issued an order denying a motion to dismiss made by the Navy. The BRB also stated that it would consider the statements in claimant's July letter.

■ The conflict issue was sufficiently raised below for the BRB to rule on it. *See In re E.R. Fegert, Inc.,* 887 F.2d 955, 957 (9th Cir.1989) (standard for whether issue was properly raised below is that argument must be sufficient for trial court to rule on it). Although Smiley had raised the conflict issue in the context of her attorney's alleged ineffectiveness, the BRB had an obligation to address it, especially because Smiley was representing herself at that point. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (obligation to construe pro se pleadings liberally); *see also Self Directed Placement Corp. v. Control Data Corp.,* 908 F.2d 462, 466 (9th Cir.1990) (issue properly raised below even though not specifically argued if party sets forth allegations falling "under the umbrella" of the unarticulated claim). However, in its decision, the BRB did not address the conflict issue at all and instructed Smiley to seek modification of the ALJ's decision to introduce evidence she claimed her attorney had withheld.

The BRB reviews errors of law by the ALJ. 33 U.S.C. § 921(b)(3). We have no problem in reaching an issue of law of which both the ALJ and the BRB were aware, and which the BRB specifically promised to consider. The Navy was fully aware of the conflict and so cannot claim surprise or lack of notice. We therefore reject the Navy's claim that we may not consider the issue of Killip's representation because it is raised for the first time on appeal.

2. *The Conflict of Interest Claim.*

■ The Navy argues that there was no conflict because Killip's representation of Smiley was unrelated to the matters in which he represented Gates, McDonald. The ALJ apparently agreed that there was no conflict because the Navy, rather than Gates, McDonald, was handling the negotiations and the hearing in Smiley's case.

This conclusion is not warranted. Gates, McDonald, as the administrator of the Navy's self-insurance scheme, has a responsibility to contest claims which it believes fall outside the scope of the Longshore Act. In the proceedings below, Gates, McDonald contested Smiley's claim and was a named defendant in the matter before the ALJ. Gates, McDonald's adverse position to Smiley's claim presented a potential conflict of interest for Killip. The ALJ's failure to determine whether Killip should have been disqualified requires reversal.

33 U.S.C. § 919(d) and 20 C.F.R. § 702.-332 (1988) provide that hearings held under the Longshore Act shall be conducted pursuant to the Administrative Procedure Act, 5 U.S.C.A. § 554 (West Supp.1992). Smiley had a statutory right to be advised and represented by counsel. 5 U.S.C.A. § 555(b) (West 1977); *see also* 20 C.F.R. §§ 702.131, 702.334 (1988); *Johnson v. Director, Office of Workers' Compensation Programs,* 9 B.L.R. 1–218 (Ben.Rev.Bd. 1986).

Ethical canons and the common law have long prohibited the representation of adverse parties in circumstances such as those presented here. *See, e.g.,* ABA Model Rules of Professional Conduct Rule 1.7(a) (1989); ABA Model Code of Professional Responsibility DR 5–105 (1981).

> "It is the general and well-settled rule that an attorney who has acted as such for one side cannot render services professionally in the same case to the other side, nor, in any event, whether it be in the same case or not, can he assume a position hostile to his client, and one inimical to the very interests he was engaged to protect; and it makes no difference, in this respect, whether the relation itself has been terminated, for the obligation of fidelity and loyalty still continues." *In re Boone,* 83 Fed. 944, 952 (C.C.N.D.Cal.1897).

*See also National Farmers Union Property & Casualty Co. v. O'Daniel,* 329 F.2d 60, 66 (9th Cir.1964) (attorney cannot ethically represent both insurer and assured after conflict developed between them on whether to settle); *In re Wooten,* 118 Fed. 670, 671 (E.D.N.C.1902) (representation of adverse interests prohibited because it is against the ethics of the profession); 1 Edward M. Thornton, *A Treatise on Attorneys at Law* § 174, at 308 (1914).

The rule against concurrent representation is based not on a concern about confidentiality as the Navy argues, but rather on the duty of undivided loyalty an attorney owes a client. *Unified Sewerage Agency of Wash. County v. Jelco Inc.,* 646 F.2d 1339, 1345 (9th Cir.1981). The rule against representing adverse interests was designed to prevent a dishonest practitioner from committing fraud as well as to prevent an honest practitioner from having to choose between conflicting duties, or attempting to reconcile conflicting interests rather than enforcing a client's rights to the fullest extent. Thornton, *supra,* § 174, at 308. Thus, the matters on which Killip represented Gates, McDonald are irrelevant. The adverse interests between Smiley and Gates, McDonald meant a potentially divided loyalty for Killip.

Gates, McDonald was actively involved in managing Smiley's medical treatment starting with her back injury in 1983. Gates, McDonald chose Dr. Kampner, who examined Smiley shortly before the hearing and whose opinion was unfavorable to Smiley. In addition, Smiley alleges that significant favorable medical evidence never obtained by Killip was in the files of the Gates, McDonald claims examiner. Under these circumstances, the fact that Navy lawyers handled the hearing and negotiations was irrelevant. Under principles the federal system has long embraced, Killip's dual representation presented grounds for disqualification if consent was lacking.

It is well-settled that courts have the power to enforce the rule against representing adverse interests to assure fairness and the proper administration of justice. *See Dunton v. County of Suffolk,* 729 F.2d 903, 909 (2d Cir.1984) (where serious conflict exists which might warrant disqualification, court must ensure client is informed because it has a duty to supervise members of its bar and assure litigants a fair trial),

*amended*, 748 F.2d 69 (2d Cir.1984); *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1263 (5th Cir.1983) (right to counsel of choice must be balanced against the need for the highest ethical standards and effective administration of justice); *Gas–A–Tron of Ariz. v. Union Oil Co. of Cal.*, 534 F.2d 1322, 1324 (9th Cir.1976) (duty of district court to supervise bar members and assure public confidence in the judicial system), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); Thornton, *supra*, § 177, at 315–16, 318 (power to restrain attorney from acting adversely to client necessary to the orderly administration of justice).

The ALJ also had the authority to make complete inquiries and, if necessary, to disqualify counsel. 20 C.F.R. § 702.339 gives an ALJ authority to "make such investigation or inquiry or conduct such hearing in such a manner as to best ascertain the rights of the parties." The BRB has held that applicable regulations give the ALJ authority to disqualify counsel for conflicts of interest prohibited by the applicable rules of professional conduct. *Baroumes v. Eagle Marine Servs.*, 23 B.R.B.S. 80 (Ben.Rev.Bd.1989) (citing 29 C.F.R. §§ 18.-34(g)(3) and 18.36). However, there is no indication that the ALJ inquired into the ethical conflict posed by the dual representation or asked Killip whether his clients had consented to the conflict. The representation was permitted to go forward on the assumption that there was no "real conflict." Without the appropriate inquiry regarding whether Killip's dual representation compromised his loyalty to Smiley and, if a conflict had been found, whether Smiley gave her informed consent, the ALJ's acquiescence violated the long standing principle prohibiting concurrent representation of adverse interests which is necessary to protect the parties' rights as well as to assure a fair and just result.

On the record before us we cannot determine whether a conflict in fact existed or whether Smiley gave informed consent to the dual representation. We therefore remand to the BRB for further proceedings.

*3. Ineffective Assistance of Counsel Claim.*

Smiley makes serious factual allegations about her attorney's performance that were not part of the record below, and which we therefore cannot consider. *See Anderson v. Cumming*, 827 F.2d 1303, 1305 (9th Cir.1987). Nevertheless, it is clear that the incompetency claim is inextricably bound up with the conflict claim. If it is necessary to reach that claim the relevant facts should be developed on remand.

All subsequent appeals in this matter will be retained by this panel.

REVERSED AND REMANDED.