POLYAGRO PLASTICS, INC., Plaintiff,

v.

CINCINNATI MILACRON, INC.,
et al., Defendants.

NORTH AMERICAN FILM,
CO., Plaintiff,

v.

CINCINNATI MILACRON, INC.,
et al., Defendants.

Civ. A. Nos. 94–1443 (HL), 94–2732 (HL).

United States District Court,
D. Puerto Rico.

Feb. 27, 1995.

Eric Perez–Ochoa, Martinez, Odell & Calabria, San Juan, PR, Bruce Martin Ginsburg, Ginsburg & Associates, Philadelphia, PA, for Polyagro Plastics, Inc., North American Film Corp.

Rafael Perez–Bachs, McConnell Valdes, San Juan, PR, David C. Horn, Frost & Jacobs, Cincinnati, OH, for Cincinnati Milacron, Inc., Sano, Inc.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is plaintiff Polyagro Plastics, Inc.'s motion to disqualify. The Court held an evidentiary hearing on the motion to disqualify on February 21, 1995, during which attorney Bruce Ginsburg, Carol Sherman, and Samuel Cespedes testified. Having considered both plaintiff's and defendants' motions and the evidence and testimony presented during the evidentiary hearing, the Court is now ready to rule.

## BACKGROUND

This case involves the following causes of action: breach of contract, breach of express and implied warranty, negligence, misrepresentation, and res ipsa loquitur. Plaintiff Polyagro Plastics, Inc. has filed a motion to disqualify defendant Cincinnati Milacron, Inc. and Sano, Inc.'s counsel, the McConnell Valdes law firm. The basis for the disqualification motion is a nine- to ten-minute telephone conversation between plaintiff's attorney, Bruce Ginsburg, and attorney Cespedes discussing the possible retention of Cespedes' law firm, McConnell Valdes, to represent plaintiff as co-counsel in this matter. After the telephone conversation, plaintiff ended up retaining another law firm and McConnell Valdes ended up representing defendants in this action.

Specifically, plaintiff argues that its stateside attorney, Ginsburg, of Ginsburg & Associates, telephoned attorney Cespedes, of McConnell Valdes, in order to "seek general advice and to seek local co-counsel for litigation in Federal Court on behalf of the Plaintiff." (Aff. of Ginsburg). Ginsburg states that the conversation covered the relationship of North American Film and Polyagro Plastics, the "potential legal and damages theories for the litigation, including an overview of the machinery at issue and its flaws/defects as sold by the Defendants" and a proposal of a financial agreement. (Aff. of Ginsburg). Cespedes then told Ginsburg he would review the matter, check for conflict, and contact Ginsburg with the firm's decision. Further, Ginsburg states that "It was assumed that all discussions would be confidential, since probing questions were asked and frank mental impressions were provided." (Aff. of Ginsburg).

During the evidentiary hearing, Ginsburg expanded upon his original affidavit. Ginsburg testified that during the nine- to ten-minute telephone conversation with Cespedes in February 1994, Ginsburg informed Cespedes that he was calling regarding a tort/contract case and that he was looking for co-counsel in Puerto Rico and assistance in Ginsburg's admittance pro hac vice. Ginsburg further explained to Cespedes that plaintiff Polyagro had purchased a $650,-000.00 piece of equipment from defendants in order to produce diaper liners and the purchased equipment did not function properly. Ginsburg explained that North American Film wanted to produce the same product in the United States and that Ginsburg would be representing them in a similar action in Pennsylvania.

Ginsburg also testified that he told Cespedes that one of plaintiff's engineers had inspected the equipment. The engineer had determined that the crux of the machinery's problem was that the "winder" did not wind because it was too long. Ginsburg told Cespedes that the machinery was unable to work due to computer and electronic problems. Moreover, Ginsburg told Cespedes the defects were irreparable. Ginsburg also informed Cespedes that the machinery's inability to function was putting pressure on the plaintiff financially, and therefore, Ginsburg was calling with a sense of urgency in moving the case along.

From there, Ginsburg testified, he informed Cespedes of the various legal theories that Ginsburg was planning to pursue: breach of contract, fraud, and misrepresentation. Ginsburg informed Cespedes that plaintiff had discovered that despite the representation by defendant that they had previously built said machinery, defendant's machinery delivered to plaintiff was a prototype. Ginsburg also testified that he informed Cespedes of the damage theories for this action and the fact that Ginsburg could document loss of income. Ginsburg told Cespedes that this case was a winner. Ginsburg and Cespedes discussed a fee arrangement, but left the conversation that Cespedes would check for a conflict and then get back in touch with Ginsburg. Ginsburg testified that Cespedes appeared interested in the case. Further, Ginsburg testified that he understood his conversation with Cespedes to be confidential and that Cespedes never steered Ginsburg away from certain topics or details.

Ginsburg further testified that he never heard from Cespedes again. In June 1994, Cespedes telephoned Ginsburg & Associates. Because Ginsburg was out of the office, Cespedes spoke with attorney Sherman. Sherman testified during the evidentiary hearing

that Cespedes stated that defendants had contacted McConnell Valdes, and if plaintiff was not interested in hiring McConnell for this action, McConnell would be representing defendants in same.

During the hearing, the Court repeatedly asked Ginsburg what information relayed to Cespedes would actually prejudice plaintiffs. Ginsburg testified that the confidential information that would prejudice plaintiffs entailed the disclosures that there was an engineer who had been monitoring the problem, the identity of the father and son who own Polyagro, the reasons for the defects in the machinery, the theories for damages, and the financial situation of Polyagro. The Court also asked Ginsburg whether or not all this information relayed to Cespedes during the telephone conversation was actually less specific than what was in the complaint. Ginsburg appeared to agree with the Court that the information relayed was less specific than that contained in the complaint, which had not been filed at the time that Ginsburg and Cespedes held their telephone conversation.

Ginsburg also testified that defendants' interrogatory number 14 indicated defendants were utilizing confidential information gained during Cespedes' conversation with Ginsburg. Ginsburg testified that but for the information relayed to Cespedes, defendants would not have written said interrogatory. Moreover, in the motion to disqualify, plaintiff states that the information contained in defendants' motion to dismiss, concerning the relationship between Polyagro and North American Film, related directly to the information conveyed to Cespedes by Ginsburg during their telephone conversation.

Finally, Ginsburg explained that his testimony during the hearing was more specific than that in his affidavit for two reasons. First, Ginsburg chose to make his affidavit less detailed because he did not want to repeat confidential information again to the advantage of defendants. Second, Ginsburg explained that because he was under time constraints during the drafting of his affidavit's testimony, it was more vague than his testimony during the hearing.

On the other hand, in his affidavit and during the hearing, Cespedes testified that during their telephone conversation in February 1994, Ginsburg spoke in generalities only about the overall nature of the matter. Ginsburg did tell Cespedes that Ginsburg was exploring whether McConnell Valdes would represent Polyagro Plastics, plaintiff herein, against Cincinnati Milacron, defendant herein, in a potential breach of contract/tort action. Cespedes testified, however, that although Ginsburg discussed that there was a defect in the machinery, Ginsburg never mentioned the "winder". Cespedes discussed the resources of the McConnell Valdes law firm and responded to Ginsburg's inquiries about other San Juan law firms. At the end of the conversation, Ginsburg promised to get back to Cespedes.

Cespedes further testified that on June 7, 1994, David Horn, an Ohio attorney for Cincinnati Milacron and Sano, attempted to contact attorney Rafael Perez–Bachs of McConnell Valdes in regards to representing said defendants in this action. Because Perez–Bachs was not in the office, Cespedes took the telephone message. Cespedes telephoned Ginsburg, advised Ginsburg's firm that the other side had requested McConnell's representation, and requested Ginsburg's decision as to which firm would represent plaintiff. Ginsburg's firm then advised Cespedes that plaintiff had selected the law firm of Martinez, Odell.

## APPLICABLE RULES

Under Local Rule 211.4(B), this Court adopts the Model Rules of Professional Conduct adopted by the American Bar Association on August 2, 1983. *In re Cordova–Gonzalez*, 996 F.2d 1334, 1335 n. 1 (1st Cir. 1993). Under Rule 1.9(a) of the Model Rules of Professional Conduct "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Model Rules of Professional Conduct Rule 1.9 (1983). And under Rule 1.10, "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone

would be prohibited from doing so by Rules .. 1.9...." Model Rules of Professional Conduct Rule 1.10 (1983).

### DISCUSSION

 Courts must balance two competing interests when deciding a motion to disqualify another party's attorney: (i) the client's right of choosing an attorney and (ii) the protection of the integrity of the judicial process. *Kevlik v. Goldstein*, 724 F.2d 844, 850 (1st Cir.1984); *Clark v. Bank of New York*, 801 F.Supp. 1182, 1196 (S.D.N.Y.1992). In general, courts disfavor motions to disqualify. *Estrada v. Cabrera*, 632 F.Supp. 1174, 1175 (D.P.R.1986); *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir.1982) ("disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary.").

 Under Rule 1.9 of the Model Rules of Professional Conduct, in order to determine whether the situation requires attorney disqualification, courts need to ascertain (i) whether there is an attorney-client relationship and (ii) if so, whether there is a substantial relationship between the former representation and present relationship. *Nelson v. Green Builders, Inc.*, 823 F.Supp. 1439, 1445 (E.D.Wis.1993); *Nemours Fdtn. v. Gilbane, Aetna, Federal Ins. Co.*, 632 F.Supp. 418, 423–24 (D.Del.1986). Under the "substantial relationship" test, the First Circuit has ruled that the Court will

'assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into the nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.'

*Kevlik*, 724 F.2d at 850 (quoting *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265, 268–69, reargument denied, 125 F.Supp. 233 (S.D.N.Y.1953)).

The disqualification rule attempts to prevent confidential information from the prior representation from being used in a subsequent action to the advantage of the subsequent client and the detriment of the former client. *See, Realco Services, Inc. v. Holt*, 479 F.Supp. 867, 871 (E.D.Pa.1979) (discussing attorney disqualification under Canon 4 of the Code of Professional Responsibility using a similar analysis to the analysis used under Rule 1.9 of the Model Rules of Professional Responsibility). The moving party bears the burden of proof in a motion to disqualify. *Estrada*, 632 F.Supp. at 1175.

Applied to the situation at hand, this Court needs to discern first whether Cespedes had an attorney-client relationship with Polyagro Plastics, Inc. as a result of his nine-minute conversation with Ginsburg. If there was such a relationship, the Court must determine whether there is a substantial relationship between Cespedes' former representation of Polyagro and Cespedes' firm's current representation of defendants Cincinnati Milacron and Sano in this action where Polyagro is the plaintiff.

 A party does not need to produce a formal contract or fee payment to establish an attorney-client relationship. *Westinghouse Elec. Corp. v. Kerr–McGee*, 580 F.2d 1311, 1319 (7th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978). A fiduciary relationship in which client confidences must be protected may arise from a "preliminary consultation by a prospective client with a view to retention of a lawyer, although actual employment does not result." *Id.* Accordingly, a party may establish an implied attorney-client relationship if (i) the party submitted confidential information to the attorney, and (ii) the party did so with the reasonable belief that his lawyer was acting as the party's attorney. *Nelson*, 823 F.Supp. at 1445; *Nemours Fdtn.*, 632 F.Supp. at 423–24.

 In the case at hand, there is no formal written or oral contract. Therefore, the Court must determine if the telephone conversation between Ginsburg and Cespedes in February 1994, constitutes an implied attorney-client relationship. In the evidentiary hearing, Ginsburg testified that he divulged confidential information concerning Polyagro's relationship with North American Film,

Polyagro's financial situation, and the plaintiff's understanding and investigation of the machinery's defect. Cespedes states that Ginsburg did not discuss the above, but did mention the case in general terms.

The Court notes the problem faced by plaintiff in carrying its burden of proving the need for disqualification in an implied attorney-client relationship case. In the first tier of investigation, the Court needs to determine if an attorney-client relationship existed between Polyagro and Cespedes. Because there was not an explicit relationship, the Court investigates the possibility of an implicit relationship. Under the case law developed in this area of law, to find an implied relationship, the Court must determine that confidential information passed between client and attorney, and that the party passed said information with the reasonable belief that the lawyer was acting as the party's attorney. *See Westinghouse,* 580 F.2d at 1319; *Nelson,* 823 F.Supp. at 1445.

The problem with requiring the showing of confidential information passing between attorney and client for the first tier is that the second tier investigation, the "substantial relationship" test, attempts to avoid placing the former client in the position of revealing the confidences divulged to his attorney. In the second tier, courts simply assume that confidences are passed in an attorney-client relationship. This assumption is made in order to avoid clients having to choose between disclosure or forfeiting their right to disqualify the other party's attorney. *See Clark,* 801 F.Supp. at 1197; *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington,* 652 F.Supp. 1281, 1283 (D.Del.1987).

The policy against disclosure of confidential information is understandable and persuasive in the situation of an *explicit* attorney-client relationship because the relationship is uncontested and one can assume that confidences were divulged. But in a situation, such as the one here, where the party must first prove that the nine- to ten-minute telephone conversation between Ginsburg and Cespedes rises to the level of an attorney-client relationship, the question of whether confidential information passed between the two persons becomes the crux of the investigation. The existence of confidential information is crucial to this situation and therefore must be proved rather than assumed. Accordingly, the Court must inquire into the substance of the information that passed between Ginsburg and Cespedes.

During the hearing, Ginsburg explained in a forthright manner the substance of what he discussed with Cespedes during their nine- to ten-minute telephone conversation. He testified that he explained to Cespedes who Polyagro Plastics was, that a father and son owned Polyagro, that Polyagro purchased machinery from Cincinnati Milacron, and that the machinery did not work because there were defects in the winder, in the electronics, and in the computers. He explained that Polyagro's engineer had conducted an investigation and found these defects and that they were incurable.

Ginsburg also testified that he told Cespedes that Polyagro had information that Cincinnati Milacron had not manufactured this piece of machinery previously, in direct contravention to Cincinnati Milacron's former representation to Polyagro that they had. Ginsburg also stated that the defect in the machinery was severely financially handicapping Polyagro and therefore there was a lot of pressure to move forward with a breach of contract/tort lawsuit. Finally, Ginsburg explained to Cespedes the relationship between Polyagro and North American Film.

In order to examine plaintiff's case, the Court takes all the above as true [1] to see if this information rises to the level of "confidential" information. To determine whether or not the information conveyed by Ginsburg to Cespedes was confidential, the Court must look to the substance of what Ginsburg relayed. It is true that if this were a situation involving an explicit attorney-client relation-

---

1. This is not a motion to dismiss nor a motion for summary judgment where the court must accept the statements in the pleadings as true or look at the motion in the light most favorable to the nonmovant. This is a motion to disqualify counsel. Nevertheless, to begin its discussion, the Court shall view the evidence in the light most favorable to the plaintiff to determine if there is enough to prove disqualification.

ship, the Court would simply assume that confidences passed between Ginsburg and Cespedes. There would be no inquiry into the substance of the information conveyed between the two. However, as stated above, because this is an implied attorney-client situation, the Court must determine whether there was confidential information.

The Court is not troubled in making this determination in that Ginsburg's testimony was forthcoming in the hearing as to the substance of his conversation with Cespedes. In fact, there was only one occasion in which Ginsburg refused to comment on the telephone conversation claiming "confidentiality". The topic Ginsburg refused to discuss concerned the relationship between Polyagro and North American Film. Exhibit A, which is attached to the complaint, is a copy of the purchase order for Polyagro's machine bought by North American Film from Cincinnati Milacron. Therefore, the Court finds that the existence of a relationship between North American Film and Polyagro is apparent from the complaint. Other than the subject of North American Film's relationship to Polyagro, Ginsburg appeared to be divulging the entirety of his conversation with Cespedes.

Of the other topics discussed by Ginsburg with Cespedes, the Court finds that most of them are detailed in the complaint. The legal theories of breach of contract, misrepresentation, and negligence are all itemized in the complaint. Further, the complaint requests $12,000,000.00 in damages showing that Polyagro has experienced extensive loss due to the defective machinery. Additionally, the complaint itemizes the numerous defects in the machinery.

Based on the foregoing discussion, it is apparent that most of the information relayed during the telephone conversation was detailed in the complaint. Although it is a fact that Ginsburg's conversation with Cespedes occurred prior to the filing of the complaint, it is also true that the complaint was filed on April 6, 1994, more than two months prior to the June 14, 1994 appearance of Cespedes' law firm in this action.

There are two items that Ginsburg discussed with Cespedes that were not contained in the complaint: the father-son owners and the fact that the plaintiff's engineer had thoroughly investigated the equipment's defects. During the hearing, Ginsburg stated that he, as an agent of the client rather than the client itself, was only just beginning to understand the machinery's defects prior to his telephone conversation with Cespedes. This statement is consistent with the Court's understanding from Ginsburg's testimony that the information relayed to Cespedes was of a vague nature. In fact, when the Court stated that it appeared that the complaint was more specific than his conversation with Cespedes, Ginsburg appeared to agree.

Therefore, although Ginsburg mentioned the engineer and the owners during his conversation with Cespedes, the Court finds that said discussion was of a general nature. Ginsburg did not provide details that if known by defendants would have given defendants a tactical advantage, such as the names of experts, the specifics as to the experts' testimony, or the specifics of documentary evidence in Ginsburg's possession.

Based on the case law stated above, the definition of "confidential information" for the purposes of a disqualification motion is information that if revealed could put the plaintiff at a disadvantage or the other party at an advantage. As described above, most of the information given during the telephone conversation was revealed in the complaint prior to McConnell Valdes' representation of defendants in this case. The rest of the information, although not revealed in the complaint, was of a general and vague nature. As agreed to by Ginsburg, the complaint was more specific than the telephone conversation.

Accordingly, finding that the information that passed to Cespedes was of a general nature and made public prior to Cespedes' law firm's representation of defendants in this action, the Court finds that said information does not constitute the requisite "confidential information" needed to create an implied attorney-client relationship between Cespedes and Polyagro. Due to the absence of said relationship, the Court finds that plaintiff's have not met their burden of prov-

ing the need for disqualifying defendants' counsel.

This finding is buttressed by the Court's weighing of the two competing interests existing in a motion to disqualify. Defendants have a right to the counsel of their choice and they have chosen the law firm of McConnell Valdes. And everyone is entitled to the judicial process being one of integrity. Because the information passed by Ginsburg to Cespedes was less specific than that information contained in the complaint, which was filed prior to the representation of defendants by Cespedes' law firm, there has been no damage to the integrity of this process. Defendants could not have discovered any information from Cespedes that was not available upon the filing of this action. Accordingly, the Court finds that while there is no damage to the integrity of the judicial process by McConnell Valdes' representation of defendants, said representation does further the interest in a party's choice of counsel.

**WHEREFORE,** the Court hereby **denies** plaintiff's motion to disqualify the McConnell Valdes law firm.

IT IS SO ORDERED.