Mark GRAY, et al., Plaintiffs,

v.

RHODE ISLAND DEPARTMENT OF
CHILDREN, YOUTH AND FAM-
ILIES, et al., Defendants.

Joseph C. CARDIN, Plaintiff,

v.

Linda D'Amario ROSSI,
et al., Defendants.

Civil Action Nos. 94–0257L, 94–0254L.

United States District Court,
D. Rhode Island.

Aug. 29, 1996.

Paul L. Foster, Lincoln, RI, William Ar-
thur Poore, Poore & Rosenbaum, Providence,
RI, Kerry F. Walsh, Richard F. Kirby, Mac-
taz, Keefer and Kirby, Providence, RI, Rob-
ert E. Savage, Warwick, RI, for plaintiffs.

Alan M. Shoer, James R. Lee, Attorney
General's Office, Providence, RI, Kevin J.
Aucoin, Department of Children and Their
Families Legal Department, Providence, RI,
for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on objections to the Report and Recommendation of United States Magistrate Judge Robert W. Lovegreen issued on November 3, 1995 regarding the disqualification of counsel[1]. The magistrate judge considered motions to disqualify counsel in two cases. In *Gray v. Rhode Island Department of Children, Youth and Families,* C.A. No. 94–0257L, the Rhode Island Attorney General moved on behalf of defendants to disqualify plaintiffs' attorney, Paul Foster ("Foster"), on the basis of both concurrent and successive conflicts of interest. In the case of *Cardin v. D'Amario Rossi,* C.A. No. 94–0254L, plaintiff sought to disqualify the Attorney General's office from representing defendants due to a concurrent conflict of interest. The magistrate judge granted the motion to disqualify plaintiffs' attorney, Foster, in *Gray.* The motion to disqualify the Attorney General's office in *Cardin* was denied, but it was recommended by the magistrate judge that the Attorney General's office withdraw from representing Cardin in a matter in Rhode Island Superior Court.

Plaintiffs in *Gray* objected to their attorney, Foster, being disqualified. Cardin did not object to the magistrate judge's rulings but the Attorney General objected in *Cardin* to the magistrate judge's recommendation that his office cease to represent Cardin in Superior Court.

For the reasons set forth below, the Court reverses the magistrate judge's order disqualifying Foster in *Gray,* and remands the matter for further consideration. The Court affirms the magistrate judge's order denying Cardin's motion to disqualify the Attorney General's office from representing defendants in *Cardin,* since there was no objection to that ruling. But the Court reverses the magistrate judge's suggestion that the Attorney General's office withdraw from representing Cardin in Superior Court.

## I. Facts

The two underlying cases, which have been consolidated for discovery purposes only, involve civil rights actions against the Rhode Island Department of Children, Youth and Families ("DCYF") and officers thereof. The twenty-six plaintiffs in *Gray* and Cardin are all current or former employees of the Rhode Island Training School, a division within DCYF. They allege that secret investigations undertaken by DCYF, and the use of the Child Abuse Network Tracking System ("CANTS") program, violate their rights as secured to them by the First, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution, as well as state law.

As previously indicated, motions to disqualify counsel were made in both cases. In *Gray,* the Attorney General moved to disqualify plaintiffs' attorney, Foster because he currently represents the Rhode Island Board of Registration for Professional Engineers and the Rhode Island Board of Registration for Professional Land Surveyors (the "Boards"). He does this on a part-time contract basis, while maintaining a private law practice. The Attorney General contends that by working for the Boards, Foster is representing the State of Rhode Island, thereby producing a concurrent conflict of interest because Foster is representing parties adverse to the "State" in *Gray.* Plaintiffs argue that Foster represents the Boards and not the State. They note that the Boards have the ability to hire and fire their own legal counsel, and that by statute, Foster is not paid with tax money, but rather with funds collected by the Boards from licensees. *See* R.I.Gen.Laws §§ 5–8–20(c), 5–8–23(b) and 5–8.14(h) (1995). For these reasons, they maintain that he should not be considered an attorney for the State for purposes of this case.

---

1. According to Rule 72(a) of the Federal Rules of Civil Procedure, the determination of a nondispositive motion by a magistrate judge should be entered in the form of an order. A motion to disqualify counsel is nondispositive of the litigation. *Kamyr AB v. Kamyr Inc.,* No. 91–cv–0453, 1991 WL 246465, at *1 (N.D.N.Y., Nov. 20, 1991). Since, in the present case, a Report and Recommendation was issued, the Court will consider it an order and regard the objections filed as appeals.

The Attorney General also contends that Foster was provided with confidential information in the 1980's when he was an attorney on the DCYF payroll, and that a conflict exists between his earlier representation of DCYF and his current representation of parties adverse to that agency in a substantially related matter. Foster denies having had access to any confidential information related to this case as a result of his former employment with DCYF. Consequently, plaintiffs argue that no successive conflict of interest exists. Finally, the Attorney General attempts to disqualify Foster based on the possibility that the Attorney General may call him as a witness in *Cardin*.[2]

The magistrate judge granted the motion to disqualify Foster, finding that Foster represents the State through his representation of the Boards. He held that representing the *Gray* plaintiffs against DCYF, an agency of the State, constitutes a conflict of interest under Rule 1.7 of the Rhode Island Rules of Professional Conduct.[3] Consequently, the magistrate judge did not reach the issue of whether Foster had been privy to any confidential information as an attorney for DCYF that might be relevant to the current case against DCYF, and whether, as a result, there was a violation of Rule 1.9 or Rule 1.11.[4]

Plaintiff in *Cardin* moved to disqualify the Attorney General from representing DCYF based on the fact that the Attorney General is concurrently representing him as a defendant in *Dondero v. D'Amario Rossi*, C.A. No. 91–6638, a case in Rhode Island Superior Court. It should be noted that Cardin is being sued only in his official capacity as a state official in the *Dondero* matter, thus, the State of Rhode Island is the real defendant. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (suit against a state official in his or her official capacity is a suit against the state itself). The magistrate judge ruled that the Attorney General could represent the defendants in *Cardin* (which was not appealed) but recommended that the Attorney General withdraw from representing Cardin in *Dondero*. The Attorney General objects to the recommendation part of that ruling because he asserts that he is *required* by state law to represent Cardin and all the other defendants being sued in their official capacity in *Dondero*. *See* R.I.Gen.Laws § 42–9–6 (1993) and § 9–31–6 (1985).[5] In

**2.** Although this argument was considered by the magistrate judge, it is not an issue here because the cases have been consolidated only for discovery purposes and will be tried separately. Cardin is represented by another lawyer.

**3.** Rule 1.7. Conflict of Interest: General Rule.

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.
Rules of Professional Conduct (1995).

**4.** Rule 1.9. Conflict of Interest: Former Client. A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

Rhode Island Rules of Professional Conduct (1995).

Rule 1.11. Successive Government and Private Employment.

(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated as a public officer or employee.

Rhode Island Rules of Professional Conduct (1995).

**5.** § 42–9–6 states in part:

[T]he attorney general, whenever requested, shall act as the legal adviser of ... all state boards, divisions, departments, and commissions and the officers thereof ... and shall appear for and defend the above-named ... boards, divisions, departments, commissions, commissioners, and officers, in all suits and proceedings which may be brought against them in their official capacity.

R.I.Gen.Laws § 42–9–6 (1993)

§ 9–31–6 provides in part:

In any action pursuant to this chapter against the state of Rhode Island, the attorney general, or any assistant attorney general authorized by him, shall represent the state in such action.

R.I.Gen.Laws § 9–31–6 (1985)

addition, the Attorney General points out that separate attorneys within his office are handling the two cases, and there has been a "wall" effectively placed between the attorneys involved. In addition, the Attorney General notes that Cardin previously considered hiring private counsel to represent him in the *Dondero* case until he discovered that the State would not pay for his private representation. For this reason, and because Cardin's motion was filed after the Attorney General moved to disqualify Foster in *Gray,* the magistrate judge was suspicious of Cardin's motives for seeking disqualification of the Attorney General's office in this case. Ultimately he denied the motion but suggested that the Attorney General's office withdraw from representing Cardin in *Dondero.*

## II. Standard of Review

■ A motion to disqualify counsel is a nondispositive motion. *Kamyr Ab v. Kamyr, Inc.,* No. 91–cv–0453, 1991 WL 246465, at *1 (N.D.N.Y., Nov. 20, 1991). A district judge has the authority to reconsider a magistrate judge's order on any pretrial, nondispositive matter where it has been demonstrated that the order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A) (1994). Federal Rule of Civil Procedure 72(a) applies the statute by providing that the district judge to whom a case is assigned shall consider any objections to a magistrate judge's order on a pretrial, nondispositive matter, and shall modify or set aside any portion of the order found to be clearly erroneous or contrary to law. *See also* Local Rules 32(b).

■ The Supreme Court has held that a finding is clearly erroneous when a court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). In other words, if two interpretations of the evidence are permissible, then a court's choice of one cannot be clearly erroneous. *United States v. Cruz Jimenez,* 894 F.2d 1, 7 (1st Cir.1990).

## III. Analysis

This Court has adopted the Rules of Professional Conduct of the Rhode Island Supreme Court as the standard of conduct for all attorneys practicing before this Court. Local Rules 4(d). The Rhode Island Supreme Court adopted the Rules of Professional Conduct (the "Rules") in November 1988, as the ethical standard for attorneys practicing law in Rhode Island, following the adoption of the Model Rules of Professional Conduct by the American Bar Association in 1983. Although the Rhode Island Rules modify certain aspects of the Model Rules, they are, for the most part, substantially identical. Therefore, case law from other jurisdictions concerning the Model Rules, or variations thereof, is highly instructive on matters of first impression in this jurisdiction.

■ Disqualification motions serve to protect the legal profession from ethical violations that shake the public's confidence in the legal profession, and also serve to preserve the dignity of the judicial process. However, unless the underlying judicial process will be tainted by an attorney's conduct, courts should be reluctant to grant disqualification motions. *Board of Educ. of New York v. Nyquist,* 590 F.2d 1241, 1246 (2nd Cir.1979).

■ Furthermore, a court must respect the client's right to retain the attorney of his or her choosing. Therefore, "[c]ourts must balance two competing interests when deciding a motion to disqualify another party's attorney: (i) the client's right of choosing an attorney and (ii) the protection of the integrity of the judicial process" *Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc.,* 903 F.Supp. 253, 256 (D.P.R.1995). It is also necessary that the court remain skeptical of disqualification motions because of the increasingly strategic manner in which they are used. *Estrada v. Cabrera,* 632 F.Supp. 1174, 1175 (D.P.R.1986).

In addition, when deciding a motion involving the potential disqualification of a governmental lawyer, additional factors must also be considered. The Rhode Island Rules, and Rule 1.11 in particular, attempt to avoid dis-

couraging lawyers from pursuing government practice.

> [T]he rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government. The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards.

Rules of Professional Conduct Rule 1.11 cmt. (1995); *see also Laker Airways Ltd. v. Pan Am. World Airways*, 103 F.R.D. 22, 28 (D.D.C.1984).

Nonetheless, governmental attorneys are subjected to more exacting standards than attorneys in private practice. Appropriately, there exists a concern that governmental attorneys will take confidential information from their government practice and use it privately to foster their own interests. *See United States v. Ostrer*, 597 F.2d 337, 340 (2nd Cir.1979). Governmental attorneys are also generally held to a higher standard because of the fact that their position within the government lends itself to publicity and notoriety. "[T]heir conduct must be even more circumspect than the conduct of private attorneys because government attorneys are 'invested with the public trust and because they are more visible to the public.'" *State of New Jersey v. Irizarry*, 271 N.J.Super. 577, 639 A.2d 305, 315 (App.Div.1994) (citing *In re Opinion No. 569*, 103 N.J. 325, 511 A.2d 119, 122 (1986)).

### A. Disqualification of Attorney Foster in *Gray*

■ The Attorney General's motion to disqualify Foster is based primarily upon Rule 1.7. It is claimed that by representing the Boards, he is representing the State and is now suing the State by representing the *Gray* plaintiffs.

The magistrate judge accepted this argument and held that Rule 1.7 applied to Foster. According to the magistrate judge, as counsel to the Boards, Foster's "client" is really the State of Rhode Island. Consequently, as counsel to the plaintiffs in *Gray*, Foster is representing clients directly adverse to the State, a current client, without that client's consent.

The magistrate judge's finding that the Boards are agencies of the state is sound. The Rhode Island Administrative Procedures Act, R.I.Gen.Laws § 42–35–1 *et. seq.*, defines an agency as "each state board, commission, department, or officer, other than the legislature or the courts, authorized by law to make rules or to determine contested cases ..." R.I.Gen.Laws § 42–35–1(a) (1993). The Board of Registration for Professional Engineers has the statutory authority to adopt and amend bylaws and rules of procedure, R.I.Gen.Laws § 5–8–8(a)(1) (1995), as well as issue orders and subpoenas for limited purposes. R.I.Gen.Laws § 5–8–8(b) (1995). In addition, under R.I.Gen.Laws § 5–8–3(c) (1995), the members of the Board are subject to the Rhode Island Code of Ethics. *See* R.I.Gen.Laws § 36–14–1 *et. seq.* (1990).

Similarly, the Board of Registration for Professional Land Surveyors is "authorized in the name of the state to apply for relief by injunction" to enforce the law relating to land surveyors, R.I.Gen.Laws § 5–8.1–4(f) (1995), and has been granted the authority to make rules and regulations on that subject matter. R.I.Gen.Laws § 5–8.1–4(b)(1) (1995).

Finally, although Foster is not paid for his services with state tax money, he is paid with state funds since the Boards have the authority to collect the fees that are used for their operations pursuant to state statute. *See* R.I.Gen.Laws § 5–8–20(c) and § 5–8–23(b) (1995).

However, the fact that the Boards are arms of the state does not necessarily mean that the "State" itself is Foster's client when he represents them. In short, the key issue here is whether Foster is representing the "State" under Rule 1.7 when he works for the Boards.

Although lawyers representing governmental agencies are subject to the Model Rules, the State has distinct and sometimes divergent interests that may make applications of the Rules more difficult than in cases involving only private clients. Thus, ascertaining who the client really is can be a complex affair when a governmental entity is involved. The definition of "client" may differ depending on whether the lawyer is rep-

resenting an individual or an agency, and whose interests are being served by the legal advice.

> When dealing with ethical principles, ... we cannot paint with broad strokes. The lines are fine and must be so marked. Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after a painstaking analysis of the facts and precise application of precedent. *Nyquist*, 590 F.2d at 1246 (quoting *United States v. Standard Oil Co.*, 136 F.Supp. 345, 367 (S.D.N.Y.1955)).

Thus, every disqualification motion, especially one involving a governmental entity, requires analysis tailored to the specific ethical dilemma presented by the circumstances. "The proper disposition of a motion to disqualify requires a careful examination of the allegedly conflicting representations." *Estrada*, 632 F.Supp. at 1176.

This is a question of first impression under Rhode Island's version of the Model Rules, but some commentary does exist on the subject of who the "client" is in a situation of this sort. At least four potential answers to the question have been set forth: A lawyer representing a governmental body represents (1) the public interest, (2) the State as a whole, (3) the agency itself, or (4) the head of the agency involved. Charles W. Wolfram, *Modern Legal Ethics* § 13.9.2 (1986). Usually the public interest perspective is discarded as being too broad in scope, while the agency head approach has been abandoned because it is too narrow. *See Report by the D.C. Bar Special Comm. on Gov't Lawyers and Model Rules of Professional Conduct*, 3 Wash.Law. 1, at 54 (Sept./Oct. 1988); Major Michael J. Davidson, *Yes Virginia, There is a Federal Agency Attorney–Client Privilege*, Fed.Bar News and J., Jan. 1994, at 52. Generally, it is agreed that the most practical answer is either that the government or the agency itself is the client. *State Bar of Mont. Ethics Comm. Op. 940202*, Mont.Law., May 1994, at 7.

Congress has taken the position that the entire government is the client by the adoption of 18 U.S.C. § 205, which prohibits an employee of the United States from acting as an attorney for anyone before any forum in which the United States is a party or has a substantial interest in the matter. 18 U.S.C. § 205(a)(2) (1994).

The State of Rhode Island, however, does not have a statute prohibiting state employee lawyers from representing individuals or entities in a proceeding involving state interests. The Rhode Island Code of Ethics, (1990) only prohibits a lawyer from representing a private client before the agency for which he or she works or is a member. R.I.Gen.Laws § 36–14–5(e)(2). The statute does not expressly prohibit representation of an individual or entity before an agency with which the lawyer is not associated, nor does it prohibit representation of a private party in a matter in which the State has a substantial interest.

The District of Columbia Bar Special Committee on Government Lawyers and The Model Rules of Professional Conduct, the New York State Bar Association, and the State Bar of Montana Ethics Committee have all examined the issue of client identification with regard to governmental lawyers. All agree that the appropriate rule should be that a lawyer representing a governmental agency only represents that agency and not the government as a whole. *State Bar of Mont. Ethics Comm. Op. 940202*, Mont.Law., May 1994, at 7; *Report by the D.C. Bar Special Comm. on Gov't Lawyers and the Model Rules of Professional Conduct*, 3 Wash.Law. 1, at 55 (Sept./Oct. 1988); *N.Y. State 447* (1976), 49 N.Y.St.Bar J., Jan. 1977, at 77. This limited consensus concluded that applying the Rules to the "State" or government as a whole is too difficult, much like the public interest approach, because of the wide reaching expanse of governmental entities. Treating the whole government as the client creates great difficulty in delineating the lines of ethical standards with the result that governmental lawyers would essentially be "removed from the strictures of many of the ethical rules." *Report by the D.C. Bar Special Comm. on Gov't Lawyers and The Model Rules of Professional Conduct*, 3 Wash. Law. 1, at 54 (Sept./Oct. 1988). Clearly, the amorphous nature of the government challenges the application of traditional ethical

concerns, such as defining the attorney-client privilege. As the D.C. Bar Report noted "[t]he identification of one's client as the entire government would raise serious questions regarding client control and confidentiality." *Id.* at 55. Thus, restricting the definition of the client to the lawyer's agency, proves to be the most appropriate answer for purposes of applying the Model Rules.

For example, in *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854 (D.C.Cir.1980), the Court examined the attorney-client privilege in the context of an attorney representing a governmental agency. Although the Court ultimately found that the documents were not privileged because of a lack of confidentiality, the Court stated that "[i]t is clear that an agency can be a client and agency lawyers can function as attorneys within the relationship contemplated by the privilege. . . ." *Id.* at 863.

This issue was examined again in the context of determining the scope of the attorney-client privilege in *United States v. American Tel. and Tel. Co.,* 86 F.R.D. 603 (D.D.C. 1980). The Court stated,

> The problem, therefore, is to determine the criteria by which the identity of a Government attorney's "client" is defined. The client clearly includes the attorney's own agency. On the other hand, it would not include some other agency under all circumstances, because any two agencies can have compatible or conflicting positions depending on the matter involved. The situation can be analogized to that of separate corporations having connections to each other. On that analogy, if the two agencies have a substantial identity of legal interest in a particular matter, the attorneys for each agency can be treated as representing both agencies jointly; if the agencies are in conflict, communications between counsel for the agencies are not within the attorney-client privilege. *Id.* at 617.

As the *AT & T* and *Coastal States* cases demonstrate, it is not reasonable to assume, in all cases, that the State as an entity is the client of a governmental lawyer who works for only one agency thereof when applying the Rules.

The Rhode Island Supreme Court's decision in *Retirement Bd. of the Employees' Retirement Sys. of Providence v. City of Providence,* 666 A.2d 810 (R.I.1995) is instructive. In that case, the Court considered the question of whether the Retirement Board, an agency of the City of Providence, had the power to appoint legal counsel other than the city solicitor when its interests conflicted with those of the City. The Court held that in six cases the city solicitor would be unable to represent the Retirement Board because of a conflict of interest under Rule 1.7. due to the fact that the Retirement Board and the City had adverse positions in these cases. *Id.* at 813. Therefore, the Court permitted the Retirement Board to retain outside counsel for those cases despite an ordinance that designated the city solicitor as the attorney for the Retirement Board. *Id.* The Court stated,

> [h]ere, the Superior Court correctly found that there was a potential conflict of interest in six specific cases wherein the retirement board and the city were on opposite sides or have adverse positions. In those cases the city solicitor could not be expected to properly represent both the retirement board and the city. *Id.*

The Rhode Island Supreme Court, therefore, recognized that in a situation where government agencies are in conflict, the agency, not the government as a whole, is to be regarded as the client.

The *Retirement Board* case illustrates the potential conflicts that can arise between different agencies within a governmental entity, thereby requiring independent representation. In that case, if the attorney hired by the Retirement Board was deemed to be an attorney for the entire City, a conflict of interest would exist under Rule 1.7, the very rule that necessitated his appearance for the Board. In fact, if the governmental entity as a whole is the client, anytime one agency of government sues another an irreconcilable conflict would arise under Rule 1.7. *See* Geoffrey C. Hazard, Jr. and W. William Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct,* § 1.3:107, at n. 4 (Supp.1996). This scenario demonstrates the absurdity that can result

from treating the entire government as the client of an agency lawyer.

Consequently, this Court concludes that, as an attorney for the Boards, Foster's clients for purposes of Rule 1.7 are the Boards themselves, and not the State of Rhode Island. "A more restrictive rule would not only be totally unnecessary, but would needlessly inhibit governmental agencies from getting needed representation on an individual case by case basis." N.Y.State 447 (1976) 49 N.Y.St.Bar J., Jan. 1977, at 77. It is imperative, however, to recognize that disqualification motions are largely dependent upon the situations presented and must be decided on a case by case basis until the law in this area is further developed.

Although an appearance of impropriety may exist in allowing an attorney for a state agency to represent a private client against another agency of the state, the Supreme Court of Rhode Island has decided that the appearance of impropriety is not a sufficient basis for the disqualification of an attorney. In *Olivier v. Town of Cumberland*, 540 A.2d 23, 27 (R.I.1988) (quoting *Sellers v. Superior Court*, 154 Ariz. 281, 289, 742 P.2d 292, 300 (1987)), the Supreme Court held that the appearance of impropriety by itself is "simply too slender a reed on which to rest a disqualification order except in the rarest of cases." Although lawyers who work for the government are not beyond the reach of the Professional Rules, in the instant case there is no justification for stretching the application of Rule 1.7 based simply on appearances. Foster's representation of plaintiffs against DCYF and its officers in *Gray* clearly does not impact his relationship with his governmental clients, the Boards.

Similarly, disqualifying Foster under Model Rule 1.7 would not further the underlying purpose of that Rule. "While we certainly do not condone violations of the Professional Rules of Conduct, neither will we rigidly or automatically disqualify attorneys where to do so would not meaningfully advance the purposes underlying Rule 1.7." *Alexander Proudfoot PLC v. Federal Ins. Co.*, No. 93–C–6287, 1994 WL 110531, at *3 (N.D.Ill. Mar. 30, 1994).

Rule 1.7 is grounded primarily upon the attorney's duty of loyalty to his or her client. Loyalty requires that the lawyer be able to adequately represent the client's interests, and do so without any interference. "Loyalty to a client is ... impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interest." Rules of Professional Conduct Rule 1.7 cmt. Therefore, Rule 1.7 prevents an attorney from accepting representation that is directly adverse to a client, thus violating the trust of the client. "The rule against representing adverse interests was designed to prevent a dishonest practitioner from committing fraud as well as to prevent an honest practitioner from having to choose between conflicting duties, or attempting to reconcile conflicting interests rather than enforcing a client's rights to the fullest extent." *Smiley v. Director, Office of Workers Compensation Programs*, 984 F.2d 278, 282 (9th Cir.1993).

In this case, Foster represents the Boards and, as their attorney, he owes them a strict duty of loyalty. Consequently, Foster may not undertake any representation that would put him in conflict with the interests of the Boards. Representing the plaintiffs in *Gray*, however, does not put Foster in the position of having to choose among the competing interests of two clients, since the Boards have no interest whatsoever in *Gray*. They have, in fact, consented to this representation. As was previously discussed, the argument that all agencies of the state share a common interest is untenable; their interests are quite often conflicting or divergent.

The duty of confidentiality, another basis for the Rules, is not threatened by Foster's representation of the *Gray* plaintiffs. Since the Boards have no relationship to DCYF, nor any interest in the *Gray* case, Foster does not have any access to confidential information that would be relevant in *Gray* resulting from his labors for the Boards. Therefore, the Court holds that Foster may continue his representation of the plaintiffs in *Gray* without violating Rule 1.7.

The question of whether Foster's past representation of DCYF creates a conflict of

**161**

interest under Rule 1.9 or Rule 1.11 cannot be determined at this time. It will be necessary to explore the nature and scope of Foster's past employment at DCYF, including the question of whether he represented DCYF in a substantially related matter. The magistrate judge did not consider this issue, therefore, it is necessary to remand the case to him to conduct such hearings as are necessary to resolve this question.

## B. Disqualification of the Attorney General in *Cardin*

 Cardin's motion to disqualify the Attorney General's office from representing DCYF and its officers was predicated on the fact that the Attorney General represented Cardin in *Dondero*. The magistrate judge denied that motion and he was correct in doing so. The *Dondero* case is really a suit against the State of Rhode Island arising out of the death of a resident at the Training School. The Attorney General's defense of state officers in that case does not affect his defense of DCYF in this case brought by Cardin. Moreover, the magistrate judge's suggestion that the Attorney General withdraw from representing Cardin in the *Dondero* matter is unjustified. This Court has no jurisdiction to decide matters of representation in state court. Thus, the Attorney General may continue to represent Cardin in the *Dondero* matter, until the Superior Court says otherwise, as well as DCYF and its officers in the instant case. "The disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except when necessary." *Bullock v. Carver*, 910 F.Supp. 551, 559 (D.Utah 1995). It is Cardin who has the option of hiring private counsel in the state case if he chooses. In the absence of any action by him in this regard, the Attorney General has the power and authority to handle the State's legal affairs in *Dondero*.

## IV. Conclusion

For the foregoing reasons, the magistrate judge's order disqualifying Foster in *Gray* under Rule 1.7 is reversed. The matter is remanded to the magistrate judge for a determination of whether Foster should be disqualified under Rule 1.9 or 1.11. The magistrate judge's denial of the motion to disqualify the Attorney General's office in *Cardin* is affirmed but his suggestion that the Attorney General withdraw from representing Cardin in *Dondero* is reversed.

It is so ordered.