# United States Court of Appeals
## For the First Circuit

No. 03-2086

KRISTIN DOUGLAS, a/k/a Tina Beth Martin,

Plaintiff, Appellant,

v.

YORK COUNTY; YORK COUNTY SHERIFF'S DEP'T;
UNKNOWN DEFENDANTS DEPUTY SHERIFFS,

Defendants, Appellees.

YORK COUNTY SHERIFF,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge, and
Lynch, Circuit Judge.

Thomas F. Hallett for appellant.
Michael J. Donlan, with whom Verrill & Dana, LLP was on brief,
for appellees.

March 11, 2004

**LYNCH**, <u>**Circuit Judge**</u>.    Kristin Douglas brought a civil rights action in May 2002 alleging that she was gang raped over thirty years earlier, at age twenty-one, while she was incarcerated for a traffic violation in the York County Jail in Maine.  Her suit claimed that a trustee prisoner who had keys to her cell entered the cell, raped her, and then let in other prisoners to the cell who also raped her.

Faced with the obvious question about why she had waited so long to bring suit, Douglas argued that she had suffered from pervasive mental illness for years and that the statute of limitations was tolled under Me. Rev. Stat. Ann. tit. 14, § 853. That statute provides:

> If a person entitled to bring any of the actions under sections 752 to 754, including section 752-C, and under sections 851, 852 and Title 24, section 2902 is a minor, mentally ill, imprisoned or without the limits of the United States when the cause of action accrues, the action may be brought within the times limited herein after the disability is removed.

The defendants moved for summary judgment on limitations grounds.  To counter Douglas's claim that she had been mentally ill within the meaning of § 853, the defendants presented an affidavit from their expert, Dr. Carlyle Voss, a psychiatrist, who had examined Douglas and reviewed records that Douglas had provided. Voss concluded that Douglas fulfilled the criteria for post-traumatic stress disorder (PTSD) due principally to childhood abuse and neglect.  Nonetheless, Dr. Voss determined that "[s]ince the

alleged rapes in 1971, Ms. Douglas's psychological disorders have not resulted in an inability to function in society in a way that prevented her from protecting her legal rights."  This same theme was repeated in Dr. Voss's reply affidavit to the affidavit submitted by the plaintiff's expert:

> It is my opinion that Ms. Douglas' psychological disorders, did not and would not, have continuously precluded her from bringing a lawsuit for the alleged rapes after they occurred in 1971.

In response to the motion for summary judgment, Douglas supported her contention that she was within the tolling statute with an affidavit from an expert psychiatrist, Dr. Diane Schetky. Dr. Schetky is board certified in psychiatry and forensic psychiatry, has qualified as an expert in numerous sexual abuse cases, and performs forensic psychiatric evaluations for the State of Maine.  She evaluated Douglas on three occasions and reviewed the medical, psychological, and psychiatric reports of Douglas's former doctors and of Dr. Voss.  Because the resolution of this appeal turns on the content of the Schetky affidavit, we quote it at some length:

> 5.  Kristin Douglas suffers from a Bi-Polar Disorder with a current depression, Post-Traumatic Stress Disorder, and Mixed-Personality Disorder, with borderline, dependent and anti-social features.  She has received various medications over the years, and is currently being prescribed Wellbutrin and Prozac, for antidepressant medications.

> 6.    Ms. Douglas grew up in a chaotic, highly dysfunctional family in which she experienced physical, emotional and sexual abuse, frequent rejection and

emotional neglect.  In addition, she had frequent changes in residence and schools and was exposed to some antisocial behavior within her home, as well.  She lacked stability and family support as a result of which, she failed to develop coping skills and was ill equipped to deal with the bad hand fate had dealt to her.  Chronic depression further limited her ability to reach her potential or assert herself.

7.  Her response to the rapes, like many victims, was to blame herself.  Her low self esteem, shame, guilt and fear contributed to her difficulty taking any action at the time of the rapes.  Her family's rejection and blame further contributed to her inability to take action.  Her trauma was compounded by her pregnancy and traumatic abortion.  Left to her own devices, she appears to have dissociated at the time she stole the gun and car and was not fully aware of her actions.  She then tried to cope with the rapes by self blame, distancing herself, avoidance, repression, and by internalizing her rage.  This further fueled her depression.  She went on to develop typical signs of Post Traumatic Stress Disorder related to the rapes including emotional numbing, intrusive symptoms, arousal and hypervigilance and difficulty with trust.

8.  She has attempted to cope by becoming dependant upon other women.  These relationships have been fraught with difficulty owing to her neediness, her fear of rejection, her rage, and difficulty sustaining relationships.  It is my impression that only recently (2000), with the help of treatment for her depression and Post Traumatic Stress Disorder, has she been strong enough to contemplate bringing a lawsuit for the rapes.  This is a brave step on her part which requires revisiting the trauma and her rage and one she could not have taken prior to finding the supportive relationship she is now in and being among people who validate her traumatic experiences and do not blame her for them.

9.  It is also my opinion that from a young age, certainly as a child, as a result of the abusive family upbringing imposed upon Ms. Douglas, she has been, and continues to be, mentally ill.  It is also my opinion that as a result of this mental illness, **and** the exacerbation of the rapes inflicted upon her at the York County Jail, that Ms. Douglas has  been at all pertinent times, suffering from an "overall inability to function

in society that prevents plaintiff[s] from protecting [her] legal rights." It is my opinion that Ms. Douglas has been functioning at a dramatically low level for a person of her obvious intelligence. She has experienced complete emotional shut-down in the past, as well as suffered suicidal ideation on a consistent basis. Her emotional shut-down has been such that she has not in the past had the ability to interact on a meaningful basis with people, or access her own feelings.

(emphasis added in paragraph 9).

The opposing expert affidavits by Voss and Schetky framed the legal issue for both parties. The defense argued in its motion for summary judgment that regardless of Douglas's psychological diagnosis, she had functioned well in society both before and after 1971, when the rapes were alleged to have taken place. It asserted that Douglas was "able to establish friendships and relationships," "secure employment and fulfill her responsibilities" and "understand, and protect, her legal rights" throughout that time. This was sufficient, argued the defense, to preclude Douglas from tolling the statute of limitations because, under Maine law, the term "mentally ill" in Me. Rev. Stat. Ann. tit. 14, § 853 "refers to an overall inability to function in society that prevents plaintiffs from protecting their legal rights." McAfee v. Cole, 637 A.2d 463, 466 (Me. 1994). In advancing this argument, the defense conceded that Douglas had suffered from PTSD in the past, but it did not focus on Douglas's mental capacity at the time of the rapes.

-5-

Douglas, not surprisingly, responded to the defendants' motion by arguing that her "undisputed" mental illness "render[ed] [her] unable to deal in any meaningful way with her life."

Despite this framing of the issue, the district court, on review of a magistrate judge's recommended decision,[1] changed the focus of the inquiry to whether the plaintiff was mentally ill at the time she was allegedly raped.[2] Cf. Dasha v. Maine Med. Ctr., 665 A.2d 993, 994 (Me. 1995) (suggesting that § 853 requires mental illness at the time of the accrual of the action). The court held that the affidavit from Dr. Schetky, the plaintiff's expert, was insufficient to show that Douglas was mentally ill at that time because of an ambiguity the court perceived in the affidavit's use of the word "and" in paragraph 9. As the district court explained it:

> A reasonable jury could not tell from Dr. Schetky's affidavit whether the psychiatrist is testifying that Douglas's "overall inability to function" preceded "the exacerbation of the rapes." The affidavit could mean that Douglas suffered the requisite degree of mental illness before the rapes (sufficient under the statute), or that her mental illness reached that level only because of the rapes (insufficient under the statute). Because Dr. Schetky's affidavit leaves the evidence, at best, in equipoise where Douglas has the burden of proof, Douglas may not proceed.

---

[1]The Magistrate Judge had stayed within the framework created by counsel and recommended dismissal of the case on limitations grounds on a different theory than the one offered by the district court.

[2]Neither of the parties' briefs to the district court re-framed the issue.

Based on this reasoning, the district court granted the defendants' motion for summary judgment.

Douglas promptly moved for reconsideration, tendering a supplemental affidavit from Dr. Schetky.  The new affidavit made it clear, if it was not already, that Dr. Schetky's opinion was, and had been all along, that Douglas was mentally ill within the meaning of the statute at the time of the rapes[3] and that the rapes had exacerbated the mental illness.  The district court denied the motion for reconsideration and granted a motion to strike Dr. Schetky's supplemental affidavit, noting that the affidavit "could easily have provided the necessary evidence [earlier], but it did not, despite the plaintiff's earlier opportunities to revive it in light of the issues raised."  The court acknowledged that the defense expert, Dr. Voss, did "not state in haec verba that Ms. Douglas was not mentally ill at the time of the alleged rape," but said that "the whole thrust of his affidavits . . . was that Ms. Douglas had never met the criteria."

There are two problems with the district court's entry of judgment for the defendants.  The first concerns its initial summary judgment decision, which we review de novo. Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 96 (1st

---

[3]Thus, this case does not raise the issue of whether Maine law would consider as within its tolling statute a case in which the tort itself drove the person mentally ill where the plaintiff had not been mentally ill before.

Cir. 2004). The district court found an ambiguity in the inferences to be drawn from Schetky's expert affidavit and ruled against Douglas on summary judgment because she bore the ultimate burden of proof on the tolling issue. But on a motion for summary judgment all reasonable inferences must be drawn in favor of the non-moving party, regardless of who bears the ultimate burden of proof. See Rosenberg v. City of Everett, 328 F.3d 12, 17 (1st Cir. 2003); Rodriguez v. Smithkline Beecham, 224 F.3d 1, 5 (1st Cir. 2000). To the extent there was an ambiguity in the affidavit, it had to be construed in Douglas's favor. In construing the inferences from the affidavit against Douglas, the non-moving party, the district court committed legal error.

The district court also erred in denying Douglas's motion for reconsideration. Denials of such motions are reviewed only for abuse of discretion. See United States v. Roberts, 978 F.2d 17, 20 (1st Cir. 1992). We conclude that this is one of those rare instances in which the district court did abuse its discretion.

When faced with a motion to reconsider, the district court must apply an interests-of-justice test. See id. at 21; Greene v. Union Mut. Life Ins. Co., 764 F.2d 19, 23 (1st Cir. 1985). It was clearly not in the interests of justice to deny reconsideration here. The issue, as framed by the defendants and responded to by the plaintiff, did not focus on whether Douglas was mentally ill at the time of the rapes, but on the question whether

any illness had precluded her from bringing suit after the alleged rapes. The defense expert never opined that Douglas was not mentally ill at the time of the rapes, and, in fact, seemed to concede that she suffered from PTSD at some point before the rapes.

Despite the focus of both parties, the district court injected a new issue into the case without giving notice and an opportunity to respond. It was simply unfair -- and an abuse of discretion -- for the district court, after having switched the basic issue without giving the parties adequate warning, to refuse to accept the prompt proffer of material relevant to the newly-raised issue.[4] This is especially true here, where a correct application of the summary judgment standard to Dr. Schetky's first affidavit very well might have obviated the need for a reconsideration motion altogether. We have previously come to this same conclusion in analogous cases in which it was clear that a party was not given a fair opportunity to present its position. See, e.g., Licciardi v. TIG Ins. Group, 140 F.3d 357, 364 (1st Cir. 1998) (district court abused its discretion in admitting evidence that led to plaintiff being "prejudiced by presenting a case addressed to one key issue, only to have defendant put on a case addressed to a different predicate key issue"); Resolution Trust Corp. v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1200 (1st Cir.

_____

[4]This case is not even the usual case of a late filing by counsel raising the issue of excusable neglect; there was no neglect at all by plaintiff's counsel.

-9-

1994) (ruling in favor of parties who were denied the opportunity to file a third affidavit when they were "laid low . . . by a rabbit punch"). For similar reasons, this court has found an abuse of discretion where a district court refused to permit a party to bring itself into compliance with an admittedly ambiguous Local Rule. See United States v. Fraya, 145 F.3d 1, 4 (1st Cir. 1998).

The defendants, perhaps anticipating our views, offer alternative grounds to defend entry of judgment in their favor. They argue that, notwithstanding Dr. Schetky's affidavits, the evidence conclusively establishes that Douglas was not so mentally ill that she could not have brought this lawsuit long before she did. But the district court never reached this issue, and we decline to do so in the first instance.

**Reversed** and **remanded** for further proceedings consistent with this opinion. Costs are awarded to plaintiff.