# United States Court of Appeals
## For the First Circuit

No. 03-2671

THE BEACON MUTUAL INSURANCE COMPANY,

Plaintiff, Appellant,

v.

ONEBEACON INSURANCE GROUP,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Selya, Circuit Judge,
Porfilio,* Senior Circuit Judge, and
Lynch, Circuit Judge.

Steven E. Snow, with whom Michael A. Gamboli, Robert K. Taylor, and Partridge Snow & Hahn LLP were on brief, for appellant.

Dalila Argaez Wendlandt, with whom Steven A. Kaufman and Ropes & Gray were on brief, for appellee.

July 12, 2004

---

\* Of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

**LYNCH**, **Circuit Judge**. This is a case of first impression for this circuit on several issues under the Lanham Act, 15 U.S.C. § 1051 et seq.

The plaintiff, formerly known as the State Compensation Insurance Fund, was chartered in 1990 by the Rhode Island legislature as the workers' compensation insurer of last resort in the state. In 1992, it adopted the name The Beacon Mutual Insurance Company ("Beacon Mutual") and, since then, has sold workers' compensation insurance in Rhode Island under the marks "The Beacon Mutual Insurance Company," "Beacon Insurance," and "The Beacon," with an accompanying lighthouse logo. The name change was brought about by increased competition following the resolution of a crisis in the state workers' compensation market.

In June 2001, the defendant OneBeacon Insurance Group ("OneBeacon"), which sells various forms of commercial insurance nationwide, switched to its current name and adopted a lighthouse logo as well, albeit in a different font and arrangement. The name change resulted from the sale of the company, then called CGU Corporation, to another company; the terms of the sale required CGU to change its name. OneBeacon is a direct competitor of Beacon Mutual in the Rhode Island market for workers' compensation insurance.

Beacon Mutual brought suit one month after OneBeacon's name change, alleging violations of the Lanham Act, 15 U.S.C. §

1125(a), and state trademark laws. On November 14, 2003, the district court granted summary judgment in favor of OneBeacon on all counts on the ground that Beacon Mutual had not demonstrated a substantial likelihood of confusion. Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 290 F. Supp. 2d 241, 252 (D.R.I. 2003). Beacon Mutual now appeals.

For likelihood of confusion to be actionable, the "confusion has to exist in the mind of a relevant person." Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1207 (1st Cir. 1983). The primary issue in this appeal is the relevance of evidence submitted by Beacon Mutual showing 249 instances of confusion between the two companies in the sixteen months following OneBeacon's adoption of its current name. Most of the confusion involved misdirected premium checks, claim forms, medical records, and legal correspondence. OneBeacon argues that those incidents do not demonstrate confusion among relevant persons because the confused persons were not those who made purchasing decisions and there was no evidence that their confusion caused Beacon Mutual to lose sales. OneBeacon's argument impermissibly narrows the scope of the court's inquiry into both the harm suffered by the plaintiff and the persons among whom confusion exists.

We hold that the type of commercial injury actionable under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is not

restricted to the loss of sales to actual and prospective buyers of the product in question. Confusion is relevant when it exists in the minds of persons in a position to influence the purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of the trademark owner. This holding is consistent with our existing case law, under which post-sale confusion is actionable. See I.P. Lund Trading, ApS v. Kohler Co., 163 F.3d 27, 44 (1st Cir. 1998). We also hold that relevant commercial injury includes not only loss of sales but also harm to the trademark holder's goodwill and reputation. See 3 McCarthy on Trademarks and Unfair Competition § 25:5 (4th ed. 1996) [hereinafter, McCarthy].

On summary judgment, all reasonable inferences must be drawn in favor of the non-moving party, Beacon Mutual. Here, a factfinder could reasonably infer that the misdirected communications (1) showed confusion among purchasing companies, their covered employees, consulting physicians and other health care providers, third-party insurers, attorneys for claimant employees, and courts handling such claims, and (2) had caused commercial injury to Beacon Mutual in the form of, inter alia, delays in claims processing, mistaken cancellations of coverage for failure to pay premiums, delayed reimbursements of health care providers, improper disclosure of confidential medical records, and risk of potential legal penalties for purchasers, covered workers,

and providers. Reasonable inferences could be drawn that these problems had damaged Beacon Mutual's goodwill and reputation. Reasonable inferences could also be drawn that these problems had led or would lead to lost sales, although the drawing of such inferences is not necessary to survive summary judgment in light of the other forms of commercial injury present in this case. Because inappropriate legal standards were employed both as to the substantive application of trademark law and as to the drawing of inferences on summary judgment, we reverse the grant of summary judgment and remand for proceedings consistent with this opinion.

**I.**

The following facts are described in the light most favorable to Beacon Mutual, the non-moving party. Zyla v. Wadsworth, 360 F.3d 243, 246 (1st Cir. 2004).

Beacon Mutual is the largest writer of workers' compensation insurance in Rhode Island, collecting over $118 million in premiums in 2001. It has used its marks and lighthouse logo since June 24, 1992, but never registered them. Over the years, Beacon Mutual has steadily increased its advertising and promotional expenditures to build its brand, spending close to $1.4 million in 2001. Beacon Mutual says that these promotional activities, most of which involve displaying its marks, are necessary to maintain its position in an increasingly competitive market. According to a consumer survey submitted by Beacon Mutual

on summary judgment, many Rhode Island consumers now associate the mark "The Beacon" with Beacon Mutual. Beacon Mutual offers its workers' compensation insurance through agents as well as through direct sales.

OneBeacon, formerly known as CGU Insurance, began using its current name and lighthouse logo nationally in early June 2001. A Boston-based corporation that sells commercial insurance nationwide, OneBeacon offers workers' compensation insurance in Rhode Island on a much smaller scale than Beacon Mutual, collecting around $1 million in workers' compensation premiums in 2001. OneBeacon says that workers' compensation insurance is not a profitable line of business for it in Rhode Island and that it offers the product only as a convenience to its existing customers. The workers' compensation coverage offered by OneBeacon is comparable to that offered by Beacon Mutual and is sold at rates that are the same or higher than Beacon Mutual's.

Beacon Mutual and OneBeacon share addresses that sound similar. Beacon Mutual is located at One Beacon Center, Warwick, Rhode Island, and OneBeacon is located at One Beacon Street, Boston, Massachusetts. Counsel for OneBeacon informed us at oral argument that Beacon Mutual was already located at its current address when her client began using the name "OneBeacon" in June 2001.

On July 5, 2001, Beacon Mutual brought a four-count trademark infringement action against OneBeacon in the Rhode Island Superior Court. Count I alleged unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); Count II alleged unfair competition under Rhode Island common law; Count III alleged service mark infringement under Rhode Island common law; and Count IV alleged trademark dilution under R.I. Gen. Laws § 6-2-12.

OneBeacon removed the case to federal court and then moved for summary judgment, arguing that all four counts should be dismissed because there was no likelihood of confusion.[1] OneBeacon relied principally on the fact that it sells workers' compensation insurance exclusively through licensed independent insurance agents. OneBeacon submitted a telephone survey showing that those agents understand the difference between the two companies and that those agents typically guide consumers, whom the agents said do not ordinarily express a preference for a particular brand of workers' compensation insurance, through the purchasing process. OneBeacon argued that if its agents are not confused, purchasers guided by those agents are unlikely to be confused either. Moreover,

---

[1] OneBeacon also argued that all four counts should be dismissed because Beacon Mutual's unregistered marks were not sufficiently "distinctive" to warrant legal protection. The district court correctly rejected that argument, stating that there was a genuine issue of material fact as to whether the marks were distinctive, Beacon Mutual Ins. Co. v. OneBeacon Ins. Group, 290 F. Supp. 2d 241, 244 (D.R.I. 2003), and OneBeacon does not challenge that holding on appeal.

OneBeacon argued that to the extent that confusion exists among non-purchasers or potential purchasers before the point of sale, such confusion is not actionable because "it cannot possibly cause the harm that the trademark laws are meant to prevent: economic harm to Beacon Mutual in the form of lost sales."

Beacon Mutual opposed summary judgment, arguing that, contrary to OneBeacon's assertion, confusion need not be tied specifically to lost sales or to the state of mind of purchasers at the point of sale to be actionable. Confusion, Beacon Mutual argued, is relevant where it adversely affects the trademark owner's commercial interests. Here, Beacon Mutual argued, at a minimum, the goodwill and reputation of Beacon Mutual were harmed by actual confusion among Rhode Island employers, workers, health care providers, third-party insurance companies, attorneys, and courts.

Beacon Mutual submitted an affidavit by Michael Lynch, vice president of legal services for Beacon Mutual, stating that shortly after OneBeacon's name change, Beacon Mutual began receiving misdirected e-mails, telephone calls, checks, and letters intended for OneBeacon. Attorney Lynch attached to his affidavit an exhibit, entitled the "Confusion Matrix," that detailed 249 instances of confusion between Beacon Mutual and OneBeacon between June 2001 and November 2002, based on Lynch's own personal knowledge and information in Beacon Mutual's business records. The

Confusion Matrix documented, <u>inter</u> <u>alia</u>, confusion among four main groups:

    (1)    Rhode Island employers (24 instances): mostly, premium checks sent to Beacon Mutual instead of OneBeacon or (in at least one instance) vice versa.

    (2)    Health care providers (95 instances): mostly, insurance claim forms or patient medical records sent to Beacon Mutual instead of OneBeacon or vice versa.

    (3)    Third-party insurance companies (18 instances): mostly, Beacon Mutual was contacted to resolve claims instead of OneBeacon or vice versa.

    (4)    Courts or attorneys (72 instances): mostly, summonses, complaints, or legal correspondence sent to Beacon Mutual instead of OneBeacon or vice versa.

Lynch stated in his affidavit that these instances of confusion had led to

> claims processing being delayed or not accomplished, both companies being potentially subjected to legal action for breach of contract or individual's privacy rights, injured workers not being timely compensated or notified of court hearings, employers not being notified of court proceedings, providers not being paid in a timely manner, and insureds not being credited for premium payments (and then having their coverage lapse or cancelled, resulting in their being in violation of the state workers' compensation laws).

Lynch also attached to his affidavit an August 29, 2001 letter from the Chief Judge of the Rhode Island Workers' Compensation Court to Beacon Mutual complaining about delays caused by confusion between the two companies:

> The Workers' Compensation Court is concerned as a result of recent confusion arising from the similarity of names between The Beacon Mutual Insurance Company and OneBeacon Insurance Group (formerly CGU Insurance Group) . . . .

> The court has been made aware that service of process and notices that are intended for OneBeacon are unintentionally being sent to The Beacon Mutual Insurance Company's office in Warwick. This confusion impacts our workers' compensation cases, in that notice to parties may be delayed, affecting both the employees['] and employers['] rights and benefits . . . .

> An additional concern is regarding preferred provider networks (PPN). The Beacon Mutual Insurance Carrier does have an approved PPN, while OneBeacon does not. When an injured worker telephones to determine if a PPN is in effect for their employer, some confusion may exi[st] as to the appropriate carrier on the part of the employee, thereby possibly limiting the employee's choice of physician inappropriately.

OneBeacon's response was that these many instances of confusion were simply irrelevant because Beacon Mutual had not demonstrated that they led to a loss of sales.

The district court granted summary judgment in favor of OneBeacon on all counts. Beacon Mutual, 290 F. Supp. 2d at 242. After first determining that there was a genuine issue of material fact as to whether Beacon Mutual's marks were distinctive, the court turned to the relevance of the Confusion Matrix. It determined that while the Confusion Matrix showed that "the

-10-

confusion Plaintiff complains of is real," the plaintiff "has not established that the entities and persons identified in its Matrix fall into the post-sale confusion category, for the simple reason that the confused entities are not consumers of the product, nor has Plaintiff shown any commercial relevance as to these entities." Id. at 246.

The court acknowledged that even if the confusion of actual purchasers is always corrected at the point of sale, confusion among non-purchasers and potential purchasers can be relevant where it affects the trademark owner's "commercial interests." Id. at 247 (citing CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc., 888 F. Supp. 192, 200 (D. Me. 1995), aff'd, 97 F.3d 1504 (1st Cir. 1996)). At one point, the court described those commercial interests as including goodwill, citing other cases that recognize the confusion of third parties as relevant when "their views are somehow related to the goodwill of the aggrieved manufacturer." Id. (quoting Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 382-83 (2d Cir. 1997)).

In applying this standard, however, the court focused on what it found to be Beacon Mutual's failure to connect the 249 instances of confusion described in the Confusion Matrix to lost sales. It emphasized that "there is no indication that this type of confusion has ever played any role in the purchasing calculus." Id. at 248. The theme of the opinion was that "Plaintiff has put

-11-

on no evidence that it has lost any business as a result of confusion among its insured" or "proffered any evidence from which this Court reasonably could infer that the confusion has affected the decision of any insured to switch providers." Id. at 249. It therefore concluded that there was an "absence of evidence" about the "possible nocent effect of this confusion on Plaintiff's market interests" and that it could not find any such effect without engaging in speculation. Id. at 248.

Drawing on its analysis of the relevance of the Confusion Matrix, the court applied the eight-factor test for likelihood of confusion used by this court in Astra, 718 F.2d at 1205 (adopting the test articulated in Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981)). See also I.P. Lund, 163 F.3d at 43; Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996). It concluded that no reasonable factfinder could find in favor of Beacon Mutual on the most important factors in the case: evidence of actual confusion, similarity in the classes of prospective purchasers, and similarity in the channels of trade. 290 F. Supp. 2d at 252. The court then held that although Beacon Mutual's marks were strong and the two parties' marks were similar, those factors could not overcome Beacon Mutual's "fatal failure to demonstrate that the confusion it identifies is connected in any way to its commercial interests." Id.

-12-

Having found no likelihood of confusion connected to commercial interests, the court dismissed the Lanham Act and state common law claims (Counts I-III).  The court also dismissed the Rhode Island statutory dilution claim (Count IV), reasoning that "[b]ecause the Court has held that Plaintiff cannot survive summary judgment on the likelihood of confusion prong of its Lanham Act claim, so, too, does its dilution claim fail."  Id.

Beacon Mutual timely appealed from the dismissal of all four claims.

**II.**

Our review of the district court's grant of summary judgment is de novo.  Douglas v. York County, 360 F.3d 286, 290 (1st Cir. 2004).  On a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-moving party (here, Beacon Mutual), regardless of who bears the ultimate burden of proof.  Id.

Beacon Mutual acknowledges that it must demonstrate a substantial likelihood of confusion to survive summary judgment on the Lanham Act and state common law counts.[2]  Section 43 of the Lanham Act, under which Count I is brought, provides that:

> Any person who, on or in connection with any goods or
> services . . . uses in commerce any word, term, name,

_____

[2]  It does argue, though, that summary judgment is inappropriate on the Rhode Island statutory dilution claim even if there is no likelihood of confusion.  We do not reach this argument.  See infra note 6.

-13-

> symbol, or device . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). The same likelihood of confusion requirement applies to Beacon Mutual's claims under Rhode Island common law for unfair competition and service mark infringement. See DeCosta v. Viacom Int'l, Inc., 981 F.2d 602, 606-07 (1st Cir. 1992) (applying collateral estoppel to prevent relitigation of likelihood of confusion issue under Lanham Act when that issue had already been decided in earlier suit under Rhode Island common law).

Eight factors, outlined most recently in I.P. Lund, are typically used to assess the likelihood of confusion: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark. 163 F.3d at 43. These factors are not to be applied mechanically. Courts may consider other factors and may accord little weight to factors that are not helpful on the particular facts of a case. See id.

-14-

## A.    Evidence of Actual Confusion

We turn first to the sixth factor, evidence of actual confusion.  On summary judgment, OneBeacon, for its part, has not disputed the accuracy of the 249 instances of actual confusion listed in the Confusion Matrix.

Instead, OneBeacon argued to the district court that confusion is relevant only if it (1) involved actual or potential purchasers and (2) caused the trademark holder to lose sales.  The extent to which the district court accepted these arguments is not clear.  The district court clearly rejected the notion that confusion is relevant only if it involves actual or potential purchasers.  Beacon Mutual, 290 F. Supp. 2d at 247.  But the district court appears at some points to have required Beacon Mutual to demonstrate that the confusion caused lost sales or lost customers, while suggesting at other points that loss of goodwill is a relevant harm.  Compare id. (requiring only a showing of an effect on "goodwill" (quoting Landscape Forms, 113 F.3d at 382-83) or other "commercial interests"), with id. at 249 (faulting Beacon Mutual for failing to offer evidence that it "lost any business" or that "the confusion has affected the decision of any insured to switch providers").  In any event, we need not determine what standard the district court applied, as our review is de novo.

We join those courts holding that actual confusion is commercially relevant if the alleged infringer's use of the mark

"could inflict commercial injury in the form of . . . a diversion of sales, damage to goodwill, or loss of control over reputation" on the trademark holder. The Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 963 (2d Cir. 1996) (internal quotation marks omitted); see also Landscape Forms, 113 F.3d at 382-83 (confusion of general public is relevant if "related to the goodwill of the aggrieved manufacturer"); Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 128 (4th Cir. 1990) ("public confusion" among non-purchasers is relevant if it "adversely affect[s] the plaintiff's ability to control his reputation among its laborers, lenders, investors, or other group with whom the plaintiff interacts"); Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc., 846 F.2d 1079, 1091 (7th Cir. 1988) ("the owner of a mark is damaged by a later use of a similar mark which place[s] the owner's reputation beyond its control, though no loss in business is shown" (emphasis and alteration in original) (internal quotation marks omitted)); Balance Dynamics Corp. v. Schmitt Indus., Inc., 204 F.3d 683, 693 (6th Cir. 2000) (damages may be awarded for actual confusion that causes harm to goodwill under Lanham Act, 15 U.S.C.A. § 1125(a), even if no lost sales have been shown). The fact that the injury is to a company's reputation or goodwill, rather than directly to its sales, does not render the confusion any less actionable. Meridian Mutual Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1118 (7th Cir. 1997).

Our holding is reinforced by the position of the Restatement of Unfair Competition, which treats confusion as relevant where it presents "a significant risk to the sales or good will of the trademark owner."  Restatement (Third) of Unfair Competition § 20 cmt. b (1995).  The leading commentators also agree that harm to goodwill and harm to reputation are actionable.  McCarthy states that the "post-sale confusion of a purchaser of an insurance policy who mistakenly makes a claim to another company with a similar name" is relevant and quotes Meridian, 128 F.3d at 1118, for the proposition that "the fact that a company's goodwill, rather than its pocketbook, is injured by actual confusion does not render the confusion meaningless."  3 McCarthy § 23:7 & n.12; see also 3A Callman on Unfair Competition, Trademarks and Monopolies § 21:4 (4th ed. 1981) ("Even without 'passing off' and diversion of trade, the injury [suffered by a trademark owner] may be grievous" because of harm to reputation).  Indeed, OneBeacon, backing off its assertion to the district court that confusion must be linked to lost sales, now admits on appeal that confusion is relevant if it "threaten[s] the sales or goodwill of the trademark owner" (emphasis added).

It is true that when a Lanham Act case involves directly competing goods, as here, the usual harm from confusion is both the potential purchase of the defendant's product rather than the plaintiff's and the loss of goodwill and reputation occasioned when

-17-

the defendant's product is inferior.[3]  But nothing in the statute suggests that demonstrable harm to plaintiff's goodwill and reputation resulting from confusion of marks is restricted to this classic situation.

We also hold that the likelihood of confusion inquiry is not limited to actual or potential purchasers, but also includes others whose confusion threatens the trademark owner's commercial interest in its mark.[4]  See Landscape Forms, 113 F.3d at 382-83; Insty*Bit, Inc. v. Poly-Tech Indus., 95 F.3d 663, 672 (8th Cir. 1996) (confusion under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), "include[s] confusion of nonpurchasers as well as direct purchasers"); Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1119-20 (6th Cir. 1996) (confusion among suppliers is relevant); Perini, 915 F.2d at 128 ("public confusion" among non-purchasers is actionable if it "will adversely affect the plaintiff's ability to control his reputation"); In re Artic Elecs. Co., Ltd., 220 U.S.P.Q. 836, 838 (T.T.A.B. 1983) ("The notion that likelihood of confusion is limited to purchaser confusion is simply not correct."); Restatement (Third) of Unfair Competition § 20 cmt. b (1995) ("To be actionable . . . confusion must threaten the

---

[3]  This case does not, as we understand it, raise a claim that the defendant's product is inferior.

[4]  We note that Beacon Mutual does not claim that the confusion here is of the "bait and switch," or "initial interest," variety.  Dorr-Oliver, Inc. v. Fluid-Quip, Inc., 94 F.3d 376, 382 (7th Cir. 1996).

-18-

commercial interests of the owner of the mark, but it is not limited to the confusion of persons doing business directly with the actor."). "Actual and potential customers of the trademark owner are the most obvious 'relevant persons,' but other persons might be relevant" if their confusion "threaten[s] the commercial interests of the owner of the mark." CMM Cable, 888 F. Supp. at 200 (internal quotation marks omitted). Relevant confusion among non-purchasers may well extend beyond the confusion of those persons positioned to influence directly the decisions of purchasers.

OneBeacon argues that summary judgment is appropriate because Beacon Mutual has not produced evidence specifically demonstrating that the confusion threatened its commercial interests, including its goodwill. If OneBeacon means that, in general, commercial injury may not ever be inferred on summary judgment, that proposition is flatly wrong. On summary judgment, all reasonable inferences must be drawn in favor of Beacon Mutual, the non-moving party. Douglas, 360 F.3d at 290; Zyla, 360 F.3d at 247; see also Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 169 F.3d 43, 56 (1st Cir. 1999) (noting that reasonable inferences must be drawn in favor of the non-moving party on summary judgment and that "[i]nferences can, of course, properly be drawn from circumstantial evidence").

If OneBeacon means that as a matter of substantive trademark law, only direct evidence (with no room for inference) may establish harm to goodwill, that contention is wrong as well. In the Title VII context, the Supreme Court has expressly rejected a direct evidence requirement, instead applying the conventional rule that a plaintiff may amass a preponderance of the evidence through direct or circumstantial evidence. Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-100 (2003). We see no reason for applying a different rule in the trademark context.

If OneBeacon means only that the evidence of record, even drawing all inferences in Beacon Mutual's favor as required on summary judgment, is insufficient to support a finding of harm to goodwill or reputation, OneBeacon is wrong yet again. Here, a factfinder taking all inferences in favor of Beacon Mutual could reasonably infer that much of the actual confusion described in the Confusion Matrix is commercially relevant.

Misdirected premium payments, one could reasonably infer, cause delays in crediting those payments. One could infer that those delays, in turn, cause the coverage of Beacon Mutual's customers (i.e., employers) to lapse or to be cancelled if the error is not corrected in time. That, in turn, one could further infer, places those employers in violation of Rhode Island laws requiring employers to maintain workers' compensation insurance. R.I. Gen. Laws § 28-29-6. Indeed, according to Lynch's affidavit

-20-

(which has not been controverted), at least one Beacon Mutual customer has had its policy lapse because of such an error. Moreover, even if the error is corrected before a lapse or cancellation in coverage occurs, it is reasonable to infer that the customer, in many instances, would be displeased by the error or by being wrongly accused of missing a premium payment. Whether or not a particular policy is actually cancelled, one could reasonably infer that Beacon Mutual's goodwill and reputation for good service has been harmed.

Similarly, a factfinder could infer that misdirected claim forms from health care providers cause delays in payments to those providers. As Chief Judge Arrigan of the Rhode Island Workers' Compensation Court noted, Beacon Mutual maintains an approved preferred provider network. Delayed payments, one could infer, make providers less inclined to remain in that network. When providers drop out of the network, injured workers covered by Beacon Mutual's workers' compensation insurance have a smaller pool of doctors and hospitals from which to choose, a result that one could infer harms Beacon Mutual's goodwill and reputation for providing good coverage.

A factfinder could further infer that injured workers will be upset when their confidential medical records are sent to the wrong insurer. Some health care providers, one could also infer, will attempt to avoid such situations, which potentially

give rise to liability under Rhode Island statutes prohibiting the disclosure of such information without written consent, R.I. Gen. Laws § 5-37.3-4, by refusing to accept patients insured by Beacon Mutual. Either of those consequences could reasonably be viewed as detracting from Beacon Mutual's goodwill and reputation.

Misdirected communications from third-party insurance agencies, one could also infer, increase the costs of claims processing, leading to lower profits (if premiums stay the same) or lower sales (if premiums go up). Where disputes with third-party insurers must be resolved before an injured worker is reimbursed, one could also infer that such misdirected communications delay reimbursement, again harming Beacon Mutual's goodwill and reputation.

Further, a factfinder could infer, as Chief Judge Arrigan did in his letter to Beacon Mutual, that employers and injured workers will not receive timely notice of legal proceedings if service of process and other legal notices are sent to the wrong insurer and that those employers' and employees' rights could be compromised as a result. It is no great leap to infer that such problems would harm Beacon Mutual's goodwill and reputation.

Given that reasonable inferences must be drawn in Beacon Mutual's favor on summary judgment, we find that Beacon Mutual has presented sufficient evidence of actual confusion relevant to its commercial interests for this factor to count in its favor on

summary judgment. That leaves OneBeacon fighting an uphill battle in arguing that no reasonable factfinder could find a substantial likelihood of confusion. Evidence of actual confusion is often considered the most persuasive evidence of likelihood of confusion because past confusion is frequently a strong indicator of future confusion. See 3 McCarthy § 23:13; see also Kos Pharms., Inc. v. Andrx Corp., No. 03-3977, 2004 U.S. App. LEXIS 10165, at *54 (3d Cir. May 24, 2004) ("even a few incidents" of actual confusion are "highly probative of the likelihood of confusion" (internal quotation marks omitted)); Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 902 (9th Cir. 2002) ("Evidence of actual confusion constitutes persuasive proof that future confusion is likely." (internal quotation marks omitted)).

## B. Application of the Remaining Seven Factors

Nonetheless, we also consider the other factors commonly used in the eight-part test. The first factor, similarity of marks, weighs in Beacon Mutual's favor. This factor is evaluated based on the "the designation's total effect." Int'l Ass'n of Machinists, 103 F.3d at 203. Here, the marks use different fonts and colors, but a factfinder could reasonably find the total effect to be similar. In both sets of marks, the most salient word is "Beacon" and the only pictorial element is a lighthouse image. See 3 McCarthy § 23:44 ("If the 'dominant' portion of both marks is the same, then confusion may be likely, notwithstanding peripheral

differences."). Moreover, OneBeacon's arguments that the marks are not confusingly similar are belied by the evidence of actual confusion.

The second factor, similarity of goods and services, also favors Beacon Mutual. OneBeacon conceded this point in its summary judgment papers before the district court and thus has abandoned any argument to the contrary. Both parties sell the same basic workers' compensation coverage in Rhode Island. Although OneBeacon's business extends to other states and other forms of insurance, a factfinder could reasonably conclude that those other lines of business do not dispel the potential for confusion in the Rhode Island market for workers' compensation insurance. See Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 818 (1st Cir. 1987) (finding similarity of goods and services between a shop specializing in Volkswagen repair and distributors that both sold and repaired Volkswagens).

Factors three (channels of trade), four (advertising), and five (classes of prospective purchasers) are often considered together because they tend to be interrelated. See Int'l Ass'n of Machinists, 103 F.3d at 204. It is not clear whether these factors favor either party. OneBeacon does not advertise its workers' compensation insurance in Rhode Island. And although Beacon Mutual and OneBeacon are selling to the same group of customers, i.e., employers in Rhode Island, it is uncontroverted, on summary

-24-

judgment, that OneBeacon's customers are guided in their decisions by independent insurance agents who understand the difference between the two companies.

But the lack of confusion among OneBeacon agents does not establish conclusively that employers purchasing the insurance are not confused. Nor does it establish lack of confusion among the users of the insurance, i.e., employees, who may influence future purchases by employers. See 3 McCarthy § 23:7 (confusion of end-users who may influence buying decisions is relevant). Indeed, the record demonstrates that confusion does exist among employees. We further note that the record does not compel the inference that the customers -- the majority of whom Attorney Lynch described in his affidavit as being small businesses with less than ten employees and premiums under $5,000 per year -- are particularly sophisticated.

The seventh factor, intent in adopting the mark, is neutral. So far, there is no dispute that OneBeacon adopted its mark in good faith: the name was chosen based, in part, on the address of the company's corporate headquarters at One Beacon Street in Boston, and although OneBeacon was aware of Beacon Mutual's existence, it had a good-faith belief that the marks would not be confused. Under this circuit's precedents, however, this factor usually matters only where an alleged infringer copied a mark in bad faith; a converse finding of good faith carries "little

-25-

weight."  I.P. Lund, 163 F.3d at 44; see Chrysler Corp. v. Silva, 118 F.3d 56, 59 n.3 (1st Cir. 1997).

The last factor, the strength of the marks, weighs in Beacon Mutual's favor.  We look to "the length of time the mark has been used, its renown in the plaintiff's field of business, and the plaintiff's actions to promote the mark."  Star Fin. Servs. v. Aastar Mortg. Corp., 89 F.3d 5, 11 (1st Cir. 1996).  Here, Beacon Mutual's marks were in use for nine years before OneBeacon adopted its current name.  Beacon Mutual's marks could reasonably be viewed as having state-wide recognition based on the company's 65% market share and the survey indicating that many Rhode Island consumers associate the mark "The Beacon" with Beacon Mutual.  Moreover, Beacon Mutual invested over $1.3 million in promoting its marks in both 2000 and 2001.[5]

The reasonable inferences, on summary judgment, work in favor of Beacon Mutual on the most critical factors in this case: evidence of actual confusion, similarity of marks, similarity of goods and services, and strength of marks.  A factfinder could supportably conclude that there is a sufficient likelihood of

---

[5]    OneBeacon argues that the mark is weak because a yellow pages search shows that the term "beacon" is used by other financial services companies in the Northeast.  But none of the Rhode Island companies listed appear to be insurance companies and there is no evidence that any of the other companies do business in Rhode Island. Cf.  Star Fin. Servs. v. Aastar Mortg. Corp., 89 F.3d 5, 11 (1st Cir. 1996) ("renown in the plaintiff's field of business" is what matters in assessing the strength of a mark (emphasis added)).

confusion between the marks.  The Lanham Act claim (Count I) and state common law claims (Counts II and III) survive summary judgment.

## III.

That leaves Count IV, the Rhode Island trademark dilution count.  OneBeacon argued to the district court that even if a substantial likelihood of confusion existed, this count should be dismissed on the ground that no factfinder could reasonably infer that such confusion would tarnish or dilute Beacon Mutual's goodwill because OneBeacon offers the same coverage and quality of insurance as Beacon Mutual.  The district court did not reach this argument, granting summary judgment on the alternative ground that the dilution claim automatically failed because no likelihood of confusion existed.[6]

Under R.I. Gen. Laws § 6-2-12,

Likelihood of <u>injury to business reputation</u> or of dilution of the distinctive quality of . . . a mark valid at common law . . . shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services. (emphasis added)

---

[6]     Beacon Mutual takes issue with the district court's reasoning on this point.  R.I. Gen. Laws § 6-2-12 states that it applies "notwithstanding . . . the absence of confusion as to the source of goods or services."  <u>Cf.</u> <u>I.P. Lund</u>, 163 F.3d at 48-49 (under federal anti-dilution statute, 15 U.S.C. § 1125(c)(1), "dilution can occur even in the absence of confusion").  We do not reach the validity of the court's reasoning on this point because we find a sufficient showing of likelihood of confusion here.

Where, as here, a factfinder could reasonably infer that actual confusion injured the trademark holder's goodwill and business reputation, no further showing of injury is necessary to survive summary judgment on a § 6-2-12 claim. Cf. Astra, 718 F.2d at 1209 (plaintiff may survive summary judgment under identically worded Massachusetts trademark dilution statute by showing "injury to the value of the mark caused by actual or potential confusion").

## IV.

Beacon Mutual must still prove its case at trial; this opinion holds only that it must be given the chance to do so. The grant of summary judgment in favor of OneBeacon is **<u>reversed</u>**, and the case is remanded for further proceedings consistent with this opinion. Costs are awarded to Beacon Mutual.