# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3057

_____

Mid-State Aftermarket Body Parts, Inc.,  *
                                    *

     Plaintiff - Appellee,            *
                                     *    Appeal from the United States

     v.                              *    District Court for the
                                     *    Eastern District of Arkansas.

MQVP, Inc., formerly known as     *
Global Validators, Inc.,            *
                                     *

     Defendant - Appellant.        *

_____

Submitted: May 18, 2006
Filed: October 19, 2006

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and COLLOTON, Circuit Judges.

_____

LOKEN, Chief Judge.

This is a trademark infringement dispute between the owner of a registered service mark, MQVP, Inc., and an alleged infringer, Mid-State Aftermarket Body Parts, Inc. MQVP appeals the district court's grant of summary judgment dismissing Lanham Act claims of infringement and false advertising. Concluding there are genuine issues of material fact as to whether Mid-State's unauthorized use of MQVP's service mark was "likely to cause confusion" as to the origin of products or services, 15 U.S.C. § 1125(a)(1)(A), or was false commercial advertising within the meaning of 15 U.S.C. § 1125(a)(1)(B), we reverse.

# I.

Insurers, automobile repair shops, and car owners have been legitimately concerned about the quality of parts used to repair damaged vehicles (aftermarket parts) and about the increasing use of counterfeit foreign parts. Responding to these concerns, a non-profit organization, Certified Automotive Parts Association (CAPA), was created in 1987. After testing, CAPA certifies that a particular part meets CAPA's recognized quality standards. The manufacturer is then authorized to place CAPA's certification mark on the external packaging of the certified part.[1]

In 2000, MQVP, a for-profit company, began marketing a competing quality assurance program, the Manufacturers' Qualification and Validation Program, and set out to enlist manufacturers and distributors of aftermarket parts. To participate, a manufacturer must have its plant "QS-9000 registered," and a distributor must have an "ISO 9000" quality control implementation plan in place that is satisfactory to MQVP.[2] After a manufacturer is approved by MQVP, the program contemplates that each shipment of qualified parts will be entered into a "Global Online Certification System." Run by MQVP on-line software, this system enables the end user of a specific part -- a repair shop or insurer -- to trace the shipment of that part from the manufacturer through the chain of distribution, thereby validating the part's quality.

---

[1]A certification mark is "any word [or] name . . . used by a person other than its owner . . . to certify . . . origin . . . quality . . . or other characteristics of such person's goods or services." 15 U.S.C. § 1127. "A certification mark is a special creature created for a purpose uniquely different from that of an ordinary trademark or service mark." 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 19:91 (4th ed. 2006). A certification mark may be cancelled if the owner markets services to which the mark attaches or permits use of the mark for purposes other than to certify. See 15 U.S.C. § 1064(5)(B) & (C).

[2]"QS-9000" is a manufacturing quality control process adopted by Ford, General Motors, and Daimler Chrysler. "ISO 9000" refers to a set of quality control standards developed by the International Organization for Standardization.

The MQVP program also includes a second on-line software service, "Global Online Corrective Action Reporting," which is a database of customer complaints and reports of non-conforming parts. This MQVP on-line software is available only to participating manufacturers and distributors. An early MQVP comparative advertising piece explained the advantages of its program as follows:

> [MQVP] has taken the spirit of CAPA, added the globally recognized quality standard to which all OEM's manufacture [QS-9000], included the added value of cradle to grave traceability and accountability and empowered it with on-line reporting software.

In 2001, MQVP registered three service marks to identify its new venture, MQVP® for the program itself, GOCERTS® for the on-line tracing system, and GOCAR® for the on-line complaint system. As amended by the Examining Attorney of the U.S. Patent and Trademark Office, the registration for the MQVP® service mark describes the services on which the mark will be used as:

> Creating and maintaining a registry of manufacturers that validates that parts or products made by the manufacturers meet established part standards and product specifications and that the manufacturers listed are registered in and follow ISO 9000, QS-9000, TS 16949 and other industry standards.

The MQVP program contemplated that participating manufacturers would qualify their parts as complying with QS-9000 quality standards *and* sell those parts to participating distributors using the GOCERTS® on-line tracing software so that end users may validate the quality of a specific part used to repair a vehicle. But the record in this case makes it clear that at least some participating manufacturers were unwilling to limit sales of qualified parts to participating MQVP distributors. Sales to non-MQVP-participants led to this Lanham Act dispute.

Mid-State is a distributor of aftermarket automobile parts that it purchases from various vendors. In 2002, Mid-State advertised that it has "MQVP parts available" in its catalog, various trade journals, flyers, and over the telephone to customers and potential customers who requested "MQVP parts." Mid-State also recorded "MQVP parts" on pick tickets sent to Mid-State customers to confirm their orders. In 2003, when Mid-State declined MQVP's offer of a license to use the MQVP® service mark and to participate in the MQVP program, MQVP demanded that Mid-State cease all use of the MQVP® mark. Mid-State began telling customers that it is not a participant in the MQVP program but continued its use of the mark. This lawsuit followed. Mid-State argues that its statement "MQVP parts available" is true because Mid-State buys qualified parts from MQVP-participating manufacturers.

## II.

We conclude that the district court's application of the Lanham Act to the undisputed and disputed facts of this case is flawed. First, the court criticized MQVP because it uses a registered *service* mark, MQVP®, "to refer to products, and it licenses others to use the mark MQVP® to refer to products." But a service mark may properly be used to identify the goods associated with the services protected by the mark, so long as the mark continues to identify the presence of some services and not only goods. Therefore, "while the distinction between a trademark and a service mark may be relevant for registration purposes, it is not particularly relevant for the purposes of the likelihood of confusion analysis." Frehling Enters., Inc. v. Int'l Select Group, Inc., 192 F.3d 1330, 1334 n.1 (11th Cir. 1999). Moreover, in this case, whether MQVP uses the mark to refer to products as well as its program services is a disputed fact. Mid-State without MQVP approval has used the mark to refer to products -- "MQVP parts available" -- and there is evidence that some program participants have used the mark in the same way. But MQVP submitted evidence that it has never *authorized* such a use. Thus, whether MQVP has permitted participants to use the mark in the same way CAPA permits third parties to use its certification

mark, and the relevance of that fact to the likelihood-of-confusion and false advertising inquiries, are issues for trial.

Next, misconstruing the "validating" component of the MQVP program, the district court concluded that MQVP describes and uses the MQVP® mark "in terms that fit the definition of" a certification mark such as the CAPA mark. To be sure, Mid-State's unauthorized use -- "MQVP parts available" -- makes MQVP® look like a certification mark for products, divorced from the validating on-line software services that MQVP markets as an essential part of the overall program. But MQVP registered MQVP® as a service mark, not a certification mark, and it is entitled to service mark protection. As described by MQVP, the mark identifies a basket of services -- verifying that participating manufacturers and distributors of qualified parts satisfy the QS-9000 and ISO-9000 quality control standards, monitoring their continued compliance, *and* providing on-line software that enables end users to verify that the qualified parts they use are genuine. "The Lanham Trademark Act affords the trademark holder the right to control the quality of the goods manufactured and sold under its trademark." Shell Oil Co. v. Commercial Petrol., Inc., 928 F.2d 104, 107 (4th Cir. 1991). Service mark owners are entitled to the same protection, so MQVP may control the services sold under its service mark. See 15 U.S.C. § 1053. Of course, MQVP may have altered its initial concept in marketing the program, in which case its infringement claims may fail. But MQVP's use of the mark and the nature of the services its use protects are disputed issues for trial that are relevant to both the likelihood-of-confusion and the false advertising issues.

Finally, the district court's likelihood-of-confusion analysis emphasized that distributor Mid-State does not offer services that compete with the MQVP services protected by the mark, and that Mid-State's customers are collision shops who are parts end users, not the manufacturers and distributors who are potential purchasers of MQVP's services. But the Lanham Act's unfair competition inquiry is not so narrow. "Confusion is relevant when it exists in the minds of persons in a position to

influence the purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of the trademark owner." Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8, 10 (1st Cir. 2004). Here, viewing the evidence most favorably to MQVP, as we must, Mid-State engaged in the unauthorized use of the MQVP® mark for the obvious purpose of confusing, indeed deceiving, end users into believing they are buying qualified "MQVP parts" that are fully validated under the MQVP program, with all its attendant services. The deception, if successful, would discourage competing vendors from paying MQVP to participate in the full program, thereby destroying the market for the very basket of services the MQVP® mark was intended to protect.

Under the Lanham Act, likelihood of confusion and false advertising are fact-intensive inquiries. See SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980) (likelihood of confusion); United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998) (false advertising). The many uncertain and outright disputed issues of material fact that permeate the chaotic record in this case persuade us that summary judgment was improperly granted. The judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

_____