**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

No. 03-1816

REX FORNARO,

Plaintiff, Appellant,

v.

WILLIAM S. GANNON, ET AL.,

Defendants, Appellants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

---

Before

Torruella, Circuit Judge,
Cyr, Senior Circuit Judge,
and Lynch, Circuit Judge,

---

Rex Fornaro on brief pro se.
Michael M. Lonergan, Margaret H. Nelson and Sulloway & Hollis, P.L.L.C., on brief for appellees.

---

December 1, 2004

---

**Per Curiam**.  Pro se plaintiff Rex Fornaro appeals a district court order that granted the defendants summary judgment in this legal malpractice action.  Plaintiff maintains that the defendants, New Hampshire attorney William S. Gannon and the law firm of Wadleigh, Starr & Peters, PLLC (WS&P), negligently litigated certain retaliatory discharge claims against plaintiff's former employer in the New Hampshire bankruptcy court.  While plaintiff has correctly identified minor errors in the district court's description of the evidence, we conclude that the court reached the correct result and that the plaintiff's claims of procedural error also fail.  Accordingly, we affirm, for the reasons explained below.

I.

Between 1993 and 1994, plaintiff worked as a flight dispatcher for Business Express Airlines (BEX).  On February 28, 1994, BEX fired plaintiff.  Plaintiff secured Connecticut counsel and filed a civil wrongful discharge action against BEX in the Connecticut superior court.  Inter alia, his complaint alleged that BEX terminated plaintiff for reporting BEX's alleged violation of flight safety statutes and regulations to the Federal Aviation Administration (FAA) and to other agents, servants, or employees of BEX.  Plaintiff sought compensatory and punitive damages on the grounds that BEX discharged him for exercising his constitutional rights to free speech, as protected by Conn. Gen. Stat. Ann, § 31-

-2-

51q, and in violation of Connecticut's Whistleblower Law, Conn. Gen. Stat. Ann. § 31-51m.[1]

BEX removed plaintiff's civil action to federal court. Thereafter, an involuntary Chapter 11 petition for BEX's bankruptcy was filed with the New Hampshire bankruptcy court, and plaintiff's Connecticut counsel filed a proof of claim on his behalf. Plaintiff then hired the defendants to represent him on his retaliatory discharge claims against BEX in the New Hampshire bankruptcy court.[2] Attorney Gannon represented plaintiff in a two-day trial of these claims. Plaintiff maintained that BEX fired him because he made an anonymous telephone complaint about BEX's short-staffing to the FAA on January 29, 1994, one month before his discharge. Testifying on behalf of BEX's Official Unsecured Creditors Committee (OUCC), plaintiff's former supervisors at BEX maintained that they fired plaintiff for chronic tardiness and that they did not know about his anonymous complaint to the FAA when they fired him.

The bankruptcy court disallowed plaintiff's claim in its entirety. Assuming that both of plaintiff's statutory claims were based on his anonymous complaint to the FAA, the bankruptcy judge

---

[1] Plaintiff's complaint also asserted common law claims that are not implicated in the instant appeal. We do not address them.

[2] The defendants also filed a separate civil action against BEX's officers and directors on plaintiff's behalf. The district court dismissed that action, and this court summarily affirmed. See Fornaro v. McManus, 187 F.3d 621 (1st Cir. 1998)(Table).

ruled that plaintiff failed to prove that BEX terminated him in violation of Conn. Gen. Stat. Ann. §§ 31-51m and 31-51q because the evidence failed to show that BEX knew about that complaint before it fired plaintiff.  The judge further concluded that even if BEX had such knowledge, plaintiff's supervisors had established that plaintiff's tardiness was a legitimate, non-retaliatory reason for his discharge and that plaintiff had failed to prove that this reason was a pretext.

Still represented by attorney Gannon, plaintiff appealed the bankruptcy court's decision to the district court.  While that appeal was pending, plaintiff consulted attorney John Burwell Garvey at present defense counsel's law firm (Sulloway and Hollis) with an eye toward securing representation in this legal malpractice action.  Ultimately attorney Garvey declined to represent plaintiff.  Seeking $10 million in damages, plaintiff filed a pro se complaint for legal malpractice that alleged, inter alia, that attorney Gannon negligently failed to present sufficient evidence that BEX fired plaintiff in retaliation for his complaint to the FAA.  Attorney Gannon promptly withdrew from plaintiff's bankruptcy appeal, and the district court allowed plaintiff's pro se motion to dismiss it.  Present defense counsel filed an answer approximately four months after attorney Garvey had declined to take plaintiff's side in this case.

At the initial pretrial conference plaintiff suggested that defense counsel might have a conflict of interest because plaintiff had consulted another attorney at Sulloway and Hollis before he filed this lawsuit. Defense counsel indicated that he had looked into the matter and did not believe that he had a conflict of interest. The magistrate judge gave plaintiff until December 1, 2000 to file a motion to disqualify defense counsel. Plaintiff did not do so.

Approximately one year later, plaintiff secured his own counsel.[3] The parties engaged in discovery and the court scheduled a jury trial to begin on May 6, 2003. One day before the filing deadline for the defendants' motion for summary judgment, plaintiff's counsel both moved to withdraw. Citing only "irreconcilable disputes and conflicts ... concerning litigation strategy and other substantive matters," counsel informed the court that plaintiff opposed withdrawal and requested an *in camera* hearing. Without holding a hearing, the district court promptly allowed counsel's motions.

Plaintiff moved for reconsideration. <u>Inter</u> <u>alia</u>, he complained that neither of his attorneys had identified a reason that justified his withdrawal with a trial date set and a dispositive motion pending and that the court should hold a hearing

___

[3] Plaintiff was represented by two attorneys in the district court. A Massachusetts attorney served as lead counsel and a New Hampshire attorney appeared as local counsel.

and deny counsel's motions or, alternatively, extend all deadlines by sixty (60) days. After plaintiff's now-withdrawn attorneys filed oppositions, the district court denied plaintiff's motion for reconsideration while granting his request for an extension. Judged from the time plaintiff submitted his motion for reconsideration, plaintiff received another sixty (60) days to find new counsel and ninety (90) days to oppose the defendants' motion for summary judgment.

Stripped of his own counsel by the order denying reconsideration, plaintiff sought to disarm his opponents by filing a motion to amend his complaint to name Sulloway and Hollis and the attorney he had previously consulted there, John Burwell Garvey, as defendants. Plaintiff purported to state a separate legal malpractice claim against these attorneys on the ground that attorney Garvey gave plaintiff bad advice about the statute of limitations that governed his malpractice claim against attorney Gannon. In addition, plaintiff alleged that he gave attorney Garvey privileged information to see if Garvey would represent him in this case, that present defense counsel improperly had access to that information, and that the district court should discipline Sulloway and Hollis for unethical conduct. The defendants urged the court to deny plaintiff's motion to amend his complaint and to sanction plaintiff for trying to force a change in defense counsel

long after the deadline for filing a motion for disqualification had expired.

The magistrate judge denied plaintiff's motion to amend his complaint as both "untimely (unduly delayed and prejudicial so close to trial) and as futile (failing to state a cause of action)." Plaintiff filed a motion for reconsideration and a motion for leave to file a reply to the defendants' objection to his motion to amend his complaint that specifically asked the district court to disqualify present defense counsel on the ground that plaintiff had disclosed confidential information to attorney Garvey. Without specifically addressing the disqualification issue, the magistrate judge endorsed plaintiff's proposed reply "moot" in light of his previous order denying plaintiff's motion to amend his complaint. Plaintiff's motion for reconsideration of that order remained pending.

Thereafter, the district court docketed plaintiff's timely opposition to the defendants' motion for summary judgment and the defendants' reply to same. Two days later, the district judge announced that he had decided to grant the defendants' motion and that an opinion justifying the court's decision would follow. Plaintiff moved for reconsideration. The court then issued an unpublished opinion which ruled that none of the evidence that plaintiff claimed attorney Gannon should have offered in the bankruptcy court would have made any difference to the trial's

outcome because that evidence still failed to show that BEX knew about plaintiff's complaint to the FAA. Simultaneously, the court denied plaintiff's motion for reconsideration of the summary judgment order and his motion for reconsideration of the order denying his motion to amend his complaint to add Sulloway and Hollis and attorney Garvey as defendants. Plaintiff filed a timely notice of appeal.

## II.

On appeal, plaintiff argues that the district court erred in granting the defendants summary judgment. In addition, plaintiff contends that the district court abused its discretion by allowing his attorneys to withdraw and thereafter denying plaintiff's motion to amend his complaint to make Sulloway and Hollis and attorney John Burwell Garvey defendants. Repeatedly citing Pearson v. First N.H. Mortgage Corp., 200 F.3d 30 (1st Cir. 1999), plaintiff implies that he deserves a second bite at the apple because the district court required him to proceed pro se involuntarily and because defense counsel has a conflict of interest. We disagree.

We review the orders granting plaintiff's attorneys' motions to withdraw only for an abuse of discretion. See, Andrews v. Bechtel Power Corp., 780 F.2d 124, 134 (1st Cir. 1985). Plaintiff contends that the district court abused its discretion by allowing his attorneys to withdraw with a trial date set, a dispositive motion pending, and without the requisite showing of "good cause"

or a hearing on counsel's motions.  Defendants say that the district court did not abuse its discretion because the court gave plaintiff sufficient time to find new counsel and respond to their summary judgment motion.  The defendants have the better argument.

Counsel's motions to withdraw were governed by New Hampshire Rule of Professional Conduct 1.16.  In relevant part, this rule provides that: "a lawyer ... <u>shall</u> withdraw ... if (1) the representation will result in violation of the rules of professional conduct ....[,]" <u>see</u> Rule 1.16(a), and that: "a lawyer <u>may</u> withdraw ... <u>if</u> withdrawal can be accomplished without material adverse effect on the interests of the client, <u>or if</u>:...(6) other good cause for withdrawal exists."  <u>See</u> Rule 1.16(b)(emphasis supplied).  The Comments to this rule suggest that the district court had the discretion to treat plaintiff's counsel's representation that "irreconcilable disputes and conflicts" existed as sufficient cause for withdrawal without requiring counsel to spell out the conflicts at an *in camera* hearing.[4]  Moreover, here

---

[4]    The ABA Model Code Comments that accompany Rule 1.16 recognize that:

> Difficulty may be encountered if withdrawal is based on the client's demand that the lawyer engage in unprofessional conduct.  The court may wish an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation.  *The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient.* (emphasis supplied).

the plaintiff and his counsel were able to air their dispute through plaintiff's motion for reconsideration and subsequent filings which confirmed that their relationship had become acrimonious. Since plaintiff had represented himself during the first year and a half that this case was pending and trial was still two months away when the court denied reconsideration, the court could reasonably assume that allowing withdrawal would not have a material adverse effect on plaintiff. The district court gave plaintiff a fair shot at finding successor counsel and opposing the defendants' motion for summary judgment by granting plaintiff the extensions he requested.

If more were needed, we note that the record suggests that plaintiff and his counsel had at least one serious disagreement over what the rules of professional conduct required plaintiff's counsel to do in light of defense counsel's inadvertent disclosure of a privileged communication. This alone supplies "good cause" for withdrawal. The district court did not abuse its discretion by allowing plaintiff's counsel to withdraw.

Similarly, the district court did not abuse its discretion by denying plaintiff's motion to amend his complaint. Insofar as plaintiff sought to add a separate legal malpractice claim against attorney Garvey and Sulloway and Hollis, his proposed amended complaint both failed to state a viable claim and was unsupported

by the record.  See Hatch v. Dep't of Children, Youth and Their Families, 274 F.3d 12, 19 (1st Cir. 2001).  The defendants' submissions showed that plaintiff could not reasonably have relied on any comment attorney Garvey might have made about the statute of limitations when plaintiff filed this lawsuit because attorney Garvey expressly warned plaintiff not to rely on Sulloway and Hollis at that point.  See Sheinkopf v. Stone, 927 F.2d 1259, 1264-65 (1st Cir. 1991)(attorney-client relationship may be implied only where record shows purported client's reliance on attorney was objectively reasonable or that attorney knowing of such reliance did nothing to negate it)(citation omitted).[5]

We also reject plaintiff's contentions that the district court should have disqualified Sulloway and Hollis in response to the allegations raised in plaintiff's motion to amend his complaint and that this court should do so now.[6]  To be sure, an attorney's fiduciary duties may be triggered by an initial consultation even if employment does not result.  See, e.g., Westinghouse Electric Corp. v. Kerr-McGee Corp., 580 F.2d 1311 (7th Cir. 1978); Polyagro

_____

[5]  It is also clear that plaintiff had decided to sue attorney Gannon and WS&P before he contacted Sulloway and Hollis and that plaintiff voluntarily dismissed his bankruptcy appeal after attorney Gannon properly withdrew from it.  Plaintiff has only himself to blame for the loss of this avenue of review.

[6]  We reject defendants' claim that plaintiff has waived the disqualification issue.  "Failures to object, unless a true waiver is involved, are almost always subject to review for plain error."  See Chestnut v. City of Lowell, 305 F.3d 18, 19 (1st Cir. 2002)(en banc)(per curiam).

<u>Plastics, Inc.</u> v. <u>Cincinnati Milacron, Inc.</u>, 903 F. Supp. 253, 256 (D.P.R. 1995).  And the fact that the defendants' submissions showed that Sulloway and Hollis never represented plaintiff in this lawsuit does not necessarily mean that plaintiff did not disclose confidential information to attorney Garvey that might have disqualified Sulloway and Hollis from defending this case.  But even if we assume that plaintiff made such a disclosure, disqualification was not required absent some showing that this gave defendants an unfair advantage in this case.  <u>See</u> <u>Kevlik</u> v. <u>Goldstein</u>, 724 F.2d 844, 848 (1st Cir. 1984)(holding dilatory disqualification motions may be granted when either the court's confidence in the attorney's vigorous representation of his client is threatened or the attorney is in a position to use privileged information to the unfair advantage of the new client)(citations omitted).  Plaintiff made no such showing.  Absent an actual adverse effect, "merely 'conducting [a] trial with counsel that should have been disqualified does not "indelibl[y] stamp or taint" the proceedings.'"  <u>See</u> <u>Fiandaca</u> v. <u>Cunningham</u>, 827 F.2d 825, 831 (1st Cir. 1987)(citations omitted).  Similarly, because plaintiff has failed to show how any alleged conflict on the part of defense counsel tainted the summary judgment proceedings, he is not due a second bite at the apple now.

III.

Finally, we turn to the summary judgment. Like the bankruptcy court, the district court assumed that plaintiff's Connecticut whistleblower and free speech claims both rested on the theory that BEX fired him in retaliation for his anonymous complaint to the FAA. On appeal, plaintiff argues that this was error, that his "true § 31-51q claim" did <u>not</u> require him to prove that BEX knew about his complaint to the FAA, and that the district court erroneously overlooked this claim and failed to view the record in the light most favorable to him. We recognize that the district court overlooked certain evidence (e.g., the Costa tape) and that the court did not address what plaintiff now says was his "true § 31-51q" claim. Even when we account for these omissions, the record fails to show that attorney Gannon's alleged malpractice even arguably caused the loss of plaintiff's retaliatory discharge claims.

We review the district court's decision de novo, mindful that "on a motion for summary judgment all reasonable inferences must be drawn in favor of the non-moving party, regardless of who bears the ultimate burden of proof." <u>See</u> <u>Douglas</u> v. <u>York County</u>, 360 F.2d 286, 288 (1st Cir. 2004). The record discloses that plaintiff worked for BEX for approximately one year, during which he commuted to BEX's Westport, Connecticut headquarters from his home in Long Ann, New Jersey. Sometimes, plaintiff was late for work. Although plaintiff insists that it was all a fabrication, the OUCC's

-13-

evidence before the bankruptcy court disclosed that plaintiff was late at least five times before he engaged in any arguably protected conduct. Indeed, on January 4, 1994, plaintiff's supervisor (DiPaola) warned plaintiff that he would be terminated if he was late once more.[7]

On January 29, 1994, plaintiff made an anonymous telephone complaint to the FAA about BEX's shortstaffing. On the following day, plaintiff made similar complaints to BEX managers O'Brien and Heller in two separate telephone conversations that plaintiff secretly tape-recorded.[8] In these conversations, plaintiff protested the fact that he was scheduled to work the next day (1/31/94) even though he had not had enough time off to rest to enable him to dispatch aircraft safely. Although plaintiff emphasized that BEX should employ enough staff to operate its airline safely, he also complained that BEX had scheduled him to work in retaliation for a grievance that he had previously filed, and he only agreed to work (and indeed, did work) after Heller assured him that he would be paid time and a half for his efforts. A few days after that (i.e., on 2/4/94), BEX supervisor Heller called plaintiff into his office and, after noting that plaintiff had once worked for the FAA, warned plaintiff that he would be fired if he was late for work again or if he released a flight

---

[7] The district court erroneously attributed this warning to supervisor Heller. The Heller warning came one month later.

[8] Heller eventually realized that he was being taped.

late. BEX records indicate that plaintiff thereafter was late several more times before his February 28th discharge.

Plaintiff maintains that the foregoing chain of events suffices to prove that BEX fired him in retaliation for his 1/29/94 anonymous complaint to the FAA (in violation of § 31-51m and § 31-51q), and, if not for that, then for his 1/30/94 telephone complaints to managers O'Brien and Heller (in violation of § 31-51q only). We disagree. The record shows only that it was just barely possible that the FAA investigated plaintiff's complaint, and there was no evidence that, if any such investigation occurred, it occurred under circumstances that would have suggested that plaintiff had triggered the investigation. On this record, the proffered admissible evidence was simply too weak and speculative to permit a rational factfinder to infer that BEX fired plaintiff for whistleblowing. Thus, summary judgment on this aspect of plaintiff's legal malpractice claim was proper. See 5 R. Mallen & J. Smith, Legal Malpractice, § 33.11, p. 87 (5th ed. 2000)("A possibility is not sufficient to allow an issue to go to the jury, even if the attorney's negligence impaired the client's ability to marshal the necessary evidence."). See also, Witte v. Desmarais, 614 A.2d 116, 120-21 (N.H. 1992)(causation is not for jury where reasonable minds can not differ on the outcome); Arnone v. Town of Enfield, 831 A.2d 260, 267 (Conn. 2003)(holding plaintiff must "produce sufficient evidence to remove the jury's function of

-15-

examining inferences and finding facts from the realm of speculation").[9]

Similarly, we conclude that no reasonable jury could find that BEX discharged plaintiff "on account of" the safety-related statements that he made to his supervisors in the context of complaining about his work schedule. See, e.g., Lowe v. Amerigas, Inc., 52 F. Supp. 2d 349 (D.Conn. 1999)(citations omitted). On this record, the evidence of plaintiff's tardiness that was before the bankruptcy court remains essentially unimpeached. As the district court correctly noted, the report of plaintiff's aviation expert did nothing to undermine the evidence of plaintiff's tardiness. Plaintiff's unsupported claims of fabrication add nothing to his case. See Fennell v. First Step Designs, Ltd., 83 F.3d 526, 533-37 (1st Cir. 1996). The record shows that, saddled with a lengthy commute, plaintiff was sometimes late for work notwithstanding repeated warnings. Even when the evidence attorney Gannon did not offer is factored into the picture, no reasonable jury could find that plaintiff's complaints to the FAA or to BEX managers prompted his discharge. Therefore, the district court did not err by granting defendants summary judgment on plaintiff's legal malpractice claims.

---

[9] Contrast, LaFond v. General Physics Services Corp., 50 F.3d 165 (2d cir. 1995)(vacating summary judgment where plaintiff himself informed employer of his whistleblowing activity). Here plaintiff has not suggested that he told anyone at BEX that he had complained to the FAA.

The appellees' motion to file a sur-reply brief is <u>allowed</u>. The judgment of the district court is summarily <u>affirmed</u>. <u>See</u> Loc. Rule 27(c).